**Constance GUICE–MILLS,**
**Plaintiff–Appellant,**

v.

**Edward J. DERWINSKI, Secretary of the Department of Veterans Affairs, Defendant–Appellee.**

**No. 1310, Docket 91–6301.**

United States Court of Appeals, Second Circuit.

Argued April 7, 1992.

Decided June 24, 1992.

Victor Omari Olds, Asst. U.S. Atty. (Otto G. Obermaier, U.S. Atty., S.D.N.Y., Thomas A. Zaccaro, Asst. U.S. Atty., New York City, of counsel), for defendant-appellee.

Before FEINBERG, WINTER and ALTIMARI, Circuit Judges.

WINTER, Circuit Judge:

Constance Guice–Mills appeals from an adverse decision after a three-day bench trial before Judge Bernard Newman.* He held that she had not been the subject of handicap discrimination by the Veterans Administration Hospital at Montrose, New York. We agree with Judge Newman that Guice–Mills' medical condition rendered her not "otherwise qualified" to satisfy the justified requirements for a head nurse position. Moreover, the hospital's offer to reassign her to the position of staff nurse for a shift compatible with her medical condition and at no decrease in grade, salary or benefits constituted a "reasonable accommodation" within the meaning of regulations promulgated pursuant to the Rehabilitation Act of 1973. We therefore affirm.

## BACKGROUND

Guice–Mills began work at the Veterans Administration Franklin Delano Roosevelt Hospital, Montrose, New York, in February 1980. Approximately one month later, she assumed the position of head nurse, which she held until her retirement on a disability pension in April 1986. There was testimony at trial, credited by Judge Newman, that head nurses need to work an "administrative tour of duty" of either a 7:30 a.m.– 4:00 p.m. shift or 8:00 a.m.–4:30 p.m. shift. Head nurses are the only management— nonunion—employees in patient-care units. They must participate in major administrative activities concerning their unit, including meetings near the beginning of their shift. They must also review and modify the care and treatment of patients often after consultation with the night supervisor. Accordingly, the hospital's standard requirement is that a head nurse be

J. Owen Zurhellen, III, Zurhellen & La Rue, New York City, for plaintiff-appellant.

* Senior Judge, United States Court of International Trade, sitting by designation.

present and fulfill the prescribed tasks during the designated administrative shift. It was also established that head nurses have worked different shifts from those above or covered more than one unit in the absence of a head nurse. However, as a matter of ordinary practice, head nurses were expected to comply with the designated schedules.

During her term as head nurse, Guice–Mills suffered from a number of maladies, among them depression, severe anxiety, insomnia and migraine headaches. She attributed these to job-related stress. In 1984, she had a major depressive episode. At that time, her physician recommended a two-month leave of absence from her job. As part of her treatment, Guice–Mills also commenced antidepressant drug therapy and, upon the recommendation of a psychiatrist, began to take sedatives. After the leave of absence, appellant returned to her job, but her depression recurred.

Upon her physician's recommendation, Guice–Mills took an extended leave of absence from February until September 1985. Returning, she again experienced depression-related symptoms, among them insomnia, extreme fatigue, lassitude, physical deterioration, significant weight gain, difficulty in concentrating, loss of interest in ordinary activities, sleeping disturbances, inability to get out of bed in the morning, and other symptoms. At that time she came under the care of a Dr. Barnes. Among other medications, Dr. Barnes prescribed Desyrel, a sedating antidepressant intended to relieve stress and induce sleep.

After beginning to take Desyrel, Guice–Mills found it nearly impossible to get out of bed in the morning and usually arrived for her 8:00 a.m. shift after 10:00 a.m. Her supervisors repeatedly instructed her to arrive by 8:00 a.m., but she regularly failed to do so.

On or about September 19, 1985, Guice–Mills asked that she be allowed to work a later block of hours, specifically 10:00 a.m.–6:30 p.m. At that time she submitted a letter from Dr. Barnes stating that she was under care for extreme stress and needed to work a later shift, beginning at or after

10:00 a.m. The letter did not mention appellant's depressive illness, her treatment or medication program, or her prognosis. Nor did it explain the significance of the 10:00 a.m. starting time.

On September 23, Dr. Richard Donn, Chief of Staff of the hospital, wrote to Dr. Barnes seeking information concerning appellant's illness, treatment plan and prognosis. Guice–Mills refused to allow Dr. Barnes to release any information. On September 24, appellant's request for a changed tour of duty was denied, and she was directed to work the 8:00 a.m.–4:30 p.m. tour of duty. On October 8, 1985, appellant submitted an application to the hospital for disability retirement. This application was approved in April 1986.

On October 22, 1985, while her application for retirement was still pending, appellant filed a complaint with the Equal Employment Opportunity Commission ("EEOC") claiming that she had been denied the requested change because she was black and handicapped. Appellant continued to arrive late, often coming in after 11:00 a.m. On January 2, 1986, before any EEOC investigation and prior to the expiration of Title VII's 180–day waiting period for commencing a lawsuit, 42 U.S.C. § 2000e–16(c), appellant filed a *pro se* action charging race- and handicap-based discrimination.

On January 8, 1986, Dr. Barnes wrote a second letter seeking to have appellant's work hours changed. In that letter, Dr. Barnes referred to appellant's need for a later starting time because of her medication schedule. Replying to that letter, Dr. Donn indicated that a particular medication schedule alone was insufficient to justify a change and professed his willingness to keep an open mind and to explore alternatives. There was no response, and on January 14, 1986, Dr. Donn reiterated his prior conclusion that, based on what he knew of the situation, he could not justify a change in appellant's tour of duty. Meanwhile, Rosell Knight, R.N., the hospital's Chief of Nursing Service, indicated a willingness to reassign appellant to the position of staff nurse in order to meet Guice–

Mills' expressed need to work a 10:00 a.m.–6:30 p.m. tour of duty. The position of staff nurse was consistent with appellant's professional training and experience, met her request for a permanent 10:00 a.m. starting time, and, so far as appears on this record (Guice–Mills having the burden of proof), maintained her compensation level. Appellant rejected the offered staff-nurse position, stating that the change would constitute a demotion and that she was not qualified for the position.

Appellant's application for disability retirement was approved in April 1986, and she terminated her employment with the hospital on April 25, 1986. The EEOC made no final determination on her complaint. The EEOC file was turned over to the Veterans Administration Office of General Counsel for final agency determination. On October 30, 1987, the Office of General Counsel of the Veterans Administration published a final decision rejecting the substance of appellant's EEOC complaint.

After a three-day bench trial, the district judge held against Guice–Mills. He found that she was a handicapped person within the meaning of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, but that her inability to work the administrative shift beginning at 8:00 a.m. rendered her not otherwise qualified for the position of head nurse. He also held that the requested accommodation would have been administratively unreasonable for the hospital and that appellant was not constructively discharged or subjected to handicap-based discrimination.

## DISCUSSION

To establish a prima facie case of discrimination under the Rehabilitation Act, a complaining party is required to show that: (1) she is a handicapped person under the Act; (2) she is "otherwise qualified" for the position; (3) she was excluded from that position solely because of her handicap; and (4) the program sponsoring the position received federal funding. *Joyner by Lowry v. Dumpson,* 712 F.2d 770, 774 (2d Cir.1983).

Title 29, § 706(8)(B) defines a handicapped individual as "any person who (i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment." 29 U.S.C. § 706(8)(B). "[M]ental impairment" includes "any ... emotional or mental illness." 29 C.F.R. § 1613.702(b)(2). For a "mental impairment" to constitute a handicap, it must "substantially limit[ ] one or more of a person's major life activities." 29 U.S.C. § 706(8)(B)(i). The pertinent regulations indicate that working and the pursuit of professional responsibilities are major life activities. 29 C.F.R. § 1613.702(c). We agree with the district court that because appellant's illness and medication regime interfered with her ability to arrive at work on time, she was a handicapped individual within the meaning of the Rehabilitation Act.

The Rehabilitation Act prohibits federal agencies from discriminating against "qualified handicapped persons." *Hall v. United States Postal Serv.,* 857 F.2d 1073, 1077 (6th Cir.1988). Only handicapped persons who are otherwise qualified for employment are protected by the statute. *Doe v. New York University,* 666 F.2d 761 (2d Cir.1981). A "qualified handicapped person" is one who "with or without reasonable accommodation can perform the essential functions of the position in question." 29 C.F.R. § 1613.702(f). Employers are under a duty to make reasonable accommodation to the known mental limitations of a qualified employee or to demonstrate that the accommodation would impose an undue hardship in its operations. 29 C.F.R. § 1613.704(a). "Reasonable accommodation may include ... job restructuring ... or modified work schedules...." 29 C.F.R. § 1613.704(b). In this case, the employer both demonstrated undue hardship and offered a reasonable accommodation.

With regard to undue hardship, the district court, concluding that "an administrative work week tour of duty was a critical requirement for the position of Head

Nurse at the Hospital," held that the hospital had no duty to grant appellant the requested accommodation in starting time. *Guice–Mills v. Derwinski,* 772 F.Supp. 188, 199 (S.D.N.Y.1991). We agree. There was testimony credited by the district court that an administrative shift commencing at 7:30 or 8:00 a.m. was an essential requirement of the head nurse position. The head nurse is the only management employee in patient units, the other employees being unionized. If Guice–Mills' request were granted, there would be no management person in the particular unit from 8:00 to 10:00 a.m. Testimony indicated that this would prevent consultation with the night supervisor as to modifications of a patient's treatment and attendance at certain meetings. Appellant's assertion that occasional exceptions were made to the shift requirements does not undermine the district court's finding that compelling the hospital to place appellant permanently in a head nurse position with a 10:00 a.m. starting time would affect the services offered by the hospital to patients in the particular unit and thus constitute an undue burden. *See Hall,* 857 F.2d at 1080 ("An accommodation is not reasonable, and will therefore not be required, if, for instance, it imposes an undue hardship upon the operation of the federal employer.") Because Guice–Mills' ailments prevented her from fulfilling the justified requirements of a head nurse position, she was not "otherwise qualified" for that position.

■ Moreover, with regard to an offer of reasonable accommodation, the hospital offered Guice–Mills a position as a staff nurse with the hours requested and with no reduction in remuneration. In addition to making changes in job requirements that do not create undue hardship for the employer, an employer may reassign the handicapped employee as a "reasonable accommodation." *See Rhone v. United States Dept. of the Army,* 665 F.Supp. 734, 743–44 (E.D.Mo.1987) (discussing *Handbook On Reasonable Accommodation* published by United States Office of Personnel Management). When an employer offers an employee an alternative position that does not require a significant reduction in pay and

benefits, that offer is a "reasonable accommodation" virtually as a matter of law. Accordingly, the offer of a staff nurse position—a position at the requested hours, for which appellant was qualified by training and experience, without loss of grade or salary—constituted a "reasonable accommodation." This may have constituted a demotion in Guice–Mills' eyes but given the fact that she could not fulfill the head nurse position, it was necessary and did not entail a loss of benefits. Guice–Mills' claim that she was not qualified for the position is of no weight because that determination is satisfied by the employer's contrary judgment.

The decision of the district court is therefore affirmed.