Donald JACKSON, Plaintiff–Appellant,

v.

VETERANS ADMINISTRATION, Administrator of Veterans Affairs, Defendant–Appellee.

No. 93–6375.

United States Court of Appeals, Eleventh Circuit.

June 6, 1994.

John L. Quinn, Birmingham, AL, for appellant.

Jack W. Selden, U.S. Atty., James G. Gann, III, D. Wayne Rogers, Jr., Birmingham, AL, for appellee.

Before BIRCH, Circuit Judge, RONEY and CLARK, Senior Circuit Judges.

RONEY, Senior Circuit Judge:

Plaintiff Donald Jackson challenges his termination from employment with the Veterans Administration. Jackson was given a temporary appointment as a housekeeping aide for the Veteran's Administration ("VA") at its Birmingham Hospital in January 1991. From the time he was hired on January 14, 1991 until April 16, 1991—a period of about two and a half months—Jackson was absent from work a total of six days. The VA terminated Jackson on April 17, 1991, for excessive absences.

Rejecting his claim that he was wrongfully fired under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (1988) (the "Act"), because of a service-connected disability caused by rheumatoid arthritis, the district court granted summary judgment in favor of the VA. Jackson appeals. We affirm.

■ Section 504 of the Rehabilitation Act states in relevant part:

No otherwise qualified individual with handicaps ... shall, solely by reason of her or his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

To prove discrimination under the Act, a plaintiff must show that he or she: (1) is "handicapped" within the meaning of the Act and relevant regulations, (2) is "otherwise qualified" for the position in question, (3) worked for a Program or activity that received federal financial assistance; and (4) was adversely treated solely because of his or her handicap. *Chandler v. City of Dallas,* 2 F.3d 1385 (5th Cir.1993). *cert. denied,* —— U.S. ——, 114 S.Ct. 1386, 128 L.Ed.2d 61 (1994).

It is undisputed that Jackson is handicapped for purposes of the Act and that the VA receives federal funding. The question here is whether Jackson is an "otherwise qualified" person who has been denied employment solely because of his handicap.

■ A person is "otherwise qualified" if he or she is able to perform the essential functions of the job in question. *School Bd. of Nassau County v. Arline,* 480 U.S. 273, 287 n. 17, 107 S.Ct. 1123, 1131 n. 17, 94 L.Ed.2d 307 (1987); *see Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1126 (11th Cir.1993); 38 C.F.R. § 18.403(K)(1) (1993). Department of Veteran Affairs ("VA") regulations implementing Section 504 define a qualified handicapped individual as follows:

With respect to employment, a handicapped person who, with reasonable accommodation, can perform the essential functions of the job in question. . . .

38 C.F.R. § 18.403(K)(1) (1993).

As a housekeeping aide, Jackson's tasks include emptying trash cans, cleaning floors and bathrooms. The VA does not dispute that Jackson performs these tasks satisfactorily *when he is at work.* The VA argues, however, that for Jackson to fully satisfy the requirements of the job he must be on site. Therefore, Jackson's presence on a routine basis is also an essential element of the job that he has failed to satisfy.

The employee must be "able to meet all of a program's requirements in spite of his handicap." *Southeastern Community College v. Davis,* 442 U.S. 397, 406, 99 S.Ct.

2361, 2367, 60 L.Ed.2d 980 (1979). Unlike other jobs that can be performed off site or deferred until a later day, the tasks of a housekeeping aide by their very nature must be performed daily at a specific location. Because Jackson was absent numerous times within the first few months of his probationary employment on a sporadic, unpredictable basis, he could not fulfill this essential function of his employment, that of being present on the job, and was not otherwise qualified. *See e.g. Walders v. Garrett,* 765 F.Supp. 303, 309 (E.D.Va.1991), *aff'd without op.,* 956 F.2d 1163 (4th Cir.1992) ("[W]hile perfect attendance is not a necessary element of all jobs, reasonably regular and predictable attendance is necessary for many."); *Wimbley v. Bolger,* 642 F.Supp. 481, 485 (W.D.Tenn. 1986), *aff'd without op.,* 831 F.2d 298 (6th Cir.1987) ("one who does not come to work cannot perform *any* of his job functions, essential or otherwise"); *Matzo v. Postmaster General,* 685 F.Supp. 260 (D.D.C.1987), *aff'd without op.,* 861 F.2d 1290 (D.C.Cir.1988) (plaintiff whose attendance at work is unreliable and sporadic failed to fulfill essential function of job). The district court correctly reasoned that Jackson has failed to prove he is an otherwise qualified individual because he has failed to satisfy the presence requirement of the job.

■ Jackson alleges that he could have satisfied this presence requirement with some accommodation. The federal regulations implementing Section 504 offer guidance regarding the federal employer's duty to accommodate. The VA is required to

> make reasonable accommodation to the known physical or mental limitations of a handicapped ... employee if such accommodation would enable that person to perform the essential functions of the job unless the [federal agency] can demonstrate that the accommodation would impose an undue hardship on the operation of its program.

38 C.F.R. § 18.412(a); *see also Prewitt v. United States Postal Serv.,* 662 F.2d 292, 308 (5th Cir. Unit A Nov. 1981) (applying the relevant EEOC regulation regarding accommodation). "Such accommodations may include 'job restructuring, and parttime or modified work schedules....'" 38 C.F.R. § 18.412(b).

Jackson sought the following accommodations: when he receives his bi-weekly treatment for arthritis, the VA could either schedule a regular off day or delay the start of Mr. Jackson's shift. In the event of a flare-up due to his condition, Jackson could swap off days with other employees, delay his shift start time, or defer more physically demanding and less time sensitive job duties until the next day.

Such accommodations do not address the heart of the problem: the unpredictable nature of Jackson's absences. There is no way to accommodate this aspect of his absences. Requiring the VA to accommodate such absences would place upon the agency the burden of making last-minute provisions for Jackson's work to be done by someone else. Such a requirement would place an undue hardship on the agency. *See Guice–Mills v. Derwinski,* 772 F.Supp. 188 (S.D.N.Y.1991), *aff'd,* 967 F.2d 794 (2d Cir.1992) (where nurse's attendance required, VA under no duty to accommodate unorthodox work schedule).

In terms of what would be considered a reasonable accommodation, Jackson cites two cases for the proposition that even absences in excess of allotted leave time may be subject to accommodation. *See Kimbro v. Atlantic–Richfield Co.,* 889 F.2d 869 (9th Cir. 1989), *cert. denied,* 498 U.S. 814, 111 S.Ct. 53, 112 L.Ed.2d 28 (1990), and *Teahan v. Metro–North Commuter R.R. Co.,* 951 F.2d 511 (2d Cir.1991). But the issue here is not whether absences in excess of allotted leave are subject to accommodation. The VA concedes Jackson only used time allotted to him. Nor does the VA dispute that five of Jackson's six absences were disability related. Rather, the issue is whether the number of sporadic, unscheduled absences within the first few months of temporary employment can be reasonably accommodated. Under the circumstances of this case, there was no reasonable accommodation for Jackson's numerous unpredictable absences in the first few months of work as a temporary employee. The VA is entitled to prevail on summary judgment where the employee is not other-

wise qualified and there exists no genuine issue of fact as to the availability of a reasonable accommodation. *See Fitzpatrick*, 2 F.3d at 1126.

Temporary employment is a method by which an employer can determine whether a person can meet the needs of the job, subject to what reasonable accommodation can be made for a disability. The district court correctly held that it was apparent that this temporary employee could not report to work consistently, a necessary part of the particular job he was hired to do.

Jackson's alternative argument that an accommodation may have been unnecessary is unsupported by the evidence available to the VA at the time of his discharge.

AFFIRMED.

BIRCH, Circuit Judge, dissenting:

I regret that I cannot join my brothers in their decision of this case. For the reasons that follow, I respectfully dissent.

## I.   Pertinent Facts

Jackson was hired by the VA in January, 1991, as a housekeeping aide at its Birmingham hospital. His employment was pursuant to a VA program wherein employees were to be veterans with a service-connected disability of thirty percent or more. Jackson suffers from degenerative rheumatoid arthritis and is rated at forty percent disabled. The VA was aware of Jackson's condition when he was hired since the program was targeted to disabled veterans. At the time, the VA stressed to Jackson that regular attendance at the hospital was important.

Jackson was dismissed from his position effective May 4, 1991, for his continued, irregular absences. He was absent six times over the three month period from mid-January to April 16, 1991. On a Friday in February and on March 15, 1991, he was absent as a result of adverse reactions to the bi-weekly treatment of his arthritis. He missed work April 3–5, 1991, because of a flare-up of his arthritic condition, although he claims to have reported to work on April 5 and been told to go home and return on Monday. On April 16, 1991, Jackson was forced to seek emergency medical treatment for an abscessed tooth. After the sixth unscheduled absence,[1] the VA notified Jackson that he was to be terminated effective May 4, 1991.

Jackson brought the current suit under the Act, claiming that he had been denied employment solely on account of his handicap. The district court disagreed, granting summary judgment to the VA. The primary basis for granting summary judgment to the VA was the conclusion that Jackson was not "otherwise qualified" under the statute for the position from which he was dismissed. The district court held that there were no disputed facts relating to his status as an otherwise qualified handicapped individual, justifying judgment for the VA as a matter of law.

## II.   Discussion

### A.   Standard of Review

The issue in this case is whether the district court was correct in finding for the VA as a matter of law. The review of a grant of summary judgment is *de novo* and we apply the same standards that guided the district court. Taking all inferences in favor of Jackson, if there is an issue which remains unresolved and which could reasonably lead a jury to find for Jackson, summary judgment should be denied.

### B.   Was Jackson Dismissed Solely on Account of His Handicap?

Section 504 of the Act, 29 U.S.C. § 794, provides, in pertinent part: "No *otherwise qualified handicapped individual* in the United States ... shall, *solely by reason of his handicap*, be excluded from the participation in [or] be denied the benefits of ... any program or activity receiving Federal financial assistance." (emphasis added). In order to prove a violation of the Act, a plaintiff must prove that: "(1) he was an 'individual with handicaps'; (2) he was 'otherwise qualified'; (3) he worked for a 'program or activity' that received federal financial assistance; and (4) he was adversely treated sole-

---

1. The parties concede that Jackson's total absences did not exceed his accrued leave time.

ly because of his handicap." *Chandler v. City of Dallas*, 2 F.3d 1385, 1390 (5th Cir. 1993). In this case there is no dispute that Jackson is handicapped under the Act, and that the VA receives federal financial assistance. The only issues, therefore, are: (1) whether Jackson was fired solely because of his handicap; and, (2) whether he was otherwise qualified.

For the purposes of summary judgment, we assume that Jackson was dismissed solely on account of his handicap. The reason for his release, according to the VA, was his continued irregular and unpredictable absences in a job in which regular attendance is an essential element. Of course, absence from work is not his handicap; rather, the question is whether his handicap, arthritis, was the cause of his irregular and unpredictable absences.[2] If so, then the fact that he was discharged because of a symptom of his handicap is of no moment, for that is the same as taking action solely on account of Jackson's handicap. *See Teahan v. Metro-North C.R. Co.*, 951 F.2d 511, 515–17 (2nd Cir.1991), *cert. denied*, — U.S. —, 113 S.Ct. 54, 121 L.Ed.2d 24 (1992). In *Teahan*, the panel observed, "whether or not absenteeism is 'caused' by a handicap is a question of fact. We note that the relevant inquiry is into the causal connection of those absences." *Id.* at 517. That court, pursuant to Fed. R.Civ.P. 56, presumed a causal connection between the handicap and the absenteeism. This approach is sound, and as a result, we should affirm that Jackson was dismissed solely by reason of his handicap.[3]

### C. *Otherwise Qualified Handicapped Individual*

The crux of the district court's grant of summary judgment to the VA is that Jackson was not an otherwise qualified handicapped individual as envisioned in the Act. The Supreme Court has determined that a person is otherwise qualified if he is "one who is able to meet all of a program's requirements *in spite of* his handicap." *Southeastern Community College v. Davis*, 442 U.S. 397, 406, 99 S.Ct. 2361, 2367, 60 L.Ed.2d 980 (1979) (emphasis added). In determining whether a handicapped individual is otherwise qualified, the reviewing court takes a two-step approach. First, the court determines whether the individual is capable of performing the essential functions of the job in question. *See Tuck v. HCA Health Services of Tennessee, Inc.*, 7 F.3d 465, 472–73 (6th Cir.1993); *Chandler v. City of Dallas*, 2 F.3d 1385, 1393 (5th Cir.1993). If so, then he is otherwise qualified. If not, the court must determine "whether any reasonable accommodation by the employer would enable him to perform those functions." *Chandler*, 2 F.3d at 1394; *See also, Tuck*, 7 F.3d at 472–73.

Here, the district court, in its memorandum opinion, stated "[t]he main issue of law is whether or not the hospital's failure to accommodate plaintiff's unpredictable absences constitutes discrimination on the basis of disability." Memorandum Opinion at 3. This appears to be a proper framing of the important issue: Whether there was an accommodation the VA could have made which would both be reasonable and allow Jackson to perform his job. It is apparent that Jackson could not perform one of the essential elements of the job without accommodation. It is undisputed that his regular attendance was a necessary part of the position into which he was hired, as routine cleaning in a hospital is of vital importance and not capable of regular delay. Therefore, the district court was correct in framing the question in light of the hospital's failure to accommodate his absences.

The error in the district court's reasoning is that it determined *as a matter of law* that

---

2. Jackson claims that at least one of his absences had no relation whatsoever to his handicap, as it was due to an abscessed tooth. However, this is likely not relevant in the current analysis. This is a review of a grant of summary judgment against Jackson, and it would be expected that Jackson, like any other employee, would have other, unpredictable illnesses or injuries. The issue, rather, is the relationship of the handicap to what the VA refers to as continuing, irregular and unpredictable absences.

3. There does not appear to be any serious dispute on this issue currently, as the district court seems to have ruled on the second element—that Jackson was not otherwise qualified. The "solely on account of" element is discussed in the interest of completeness.

the hospital was not required to accommodate irregular and unpredictable absences. The court stated: "Plaintiff has not demonstrated that he is an 'otherwise qualified' individual because he has not demonstrated his ability to fulfill a major criterion of the job—*his presence.* Additionally, defendant had *no legal duty to alter plaintiff's schedule* to accommodate plaintiff's unpredictable absences." Memorandum Opinion at 9 (emphasis added). The district court answered the first prong correctly. The district court then went on to hold as a matter of law that there is no requirement for an employer to make accommodation for unpredictable absences, thus avoiding the need to determine whether any of the accommodations proposed by Jackson were reasonable.

In order to reach such a conclusion, the district court relied on several cases from other district courts. In *Santiago v. Temple Univ.,* 739 F.Supp. 974 (E.D.Pa.1990), *aff'd without op.,* 928 F.2d 396 (3d Cir.1991), the court held that "[a]n employee of any status . . . cannot be qualified for his position if he is unable to attend the workplace to perform the required duties, because attendance is necessarily the fundamental prerequisite to job qualifications. 'The law does not protect absenteeism or employees who take excessive leave and are unable to perform the prerequisites of their jobs.'" *Id.* at 979, quoting *Stevens v. Stubbs,* 576 F.Supp. 1409, 1415 (N.D.Ga.1983). In both of these cases, however, even if they are persuasive here, the plaintiff was *excessively* absent, making it impossible for him or her to do the job. The courts in these cases recognized that the excessive leave meant that the employees were unable to perform the prerequisites of their jobs. However, that does not appear to be a reasonable or logical conclusion in this case. Jackson had not used any leave other than his accrued time off. Jackson's absenteeism may have been shown to be irregular and unpredictable, but *as of the time of his dismissal it was not excessive.* While excessive absenteeism may *per se* eliminate an essential function of the job, so that no accommodation is required, it is less clear that

unpredictable absences, if not excessive, should do the same.[4]

The district court also relied on *Matzo v. Postmaster General,* 685 F.Supp. 260 (D.D.C. 1987), *aff'd without op.,* 861 F.2d 1290 (D.C.Cir.1988). However, the district court admitted that this case was less instructive since the plaintiff took three months from work without notice to her employee. This may not be persuasive for the same reason that *Santiago* and *Stevens* are not—the distinction between excessive and unpredictable absenteeism.

The district court then cites *Wimbley v. Bolger,* 642 F.Supp. 481 (W.D.Tenn.1986), *aff'd without op.,* 831 F.2d 298 (6th Cir.1987). Although the district court observed that this is the least instructive case because of the lack of similar facts, it may actually be the most persuasive case for the conclusion that there is no requirement, as a matter of law, to accommodate unpredictable absences. The court there noted that even if the plaintiff's suggestion of a part time schedule were employed, the problem of his inability to notify his employer in advance of his absences would not be solved by that accommodation. *Id.* at 486. Of course, that depended on the need for the plaintiff to be at work during particular set hours to get his work done. In addition, it also appears the plaintiff was absent excessively in that case.

The final case the district court cites is *Guice–Mills v. Derwinski,* 772 F.Supp. 188 (S.D.N.Y.1992), *aff'd.,* 967 F.2d 794 (2d Cir. 1992). In that case the plaintiff, a nurse, requested that her schedule be shifted from a starting time of 7:30 or 8:00 a.m. to 10:00 a.m. The court there held that this was a *per se* unreasonable accommodation. However, the rationale for this holding was particular to plaintiff's position in the hospital. She was the head nurse during the shift, the only non-unionized management nurse on duty. If she were not present from 8:00 to 10:00 a.m., there would be no such person on duty and the responsibilities of that position would go undone. Likewise, she would not

---

**4.** It is worth noting that the amount of sick leave an employee is given may be a helpful indicator of how much unpredictable absenteeism is acceptable. In both *Santiago* and *Stevens* the plaintiffs had apparently exceeded this amount by a great deal.

be able to meet with the night shift head nurse, who left at 7:30 or 8:00 a.m., to review the current activities on the floor. It appears that the holding there rested on the notion that there was no genuine issue of material fact that an essential element of the job would be eliminated if she were allowed to start later, so that the accommodation was *per se* unreasonable.

From these cases, eliminating the ones dealing solely with excessive absences, which is not our case, certain concepts emerge. Primarily, the key to determining the reasonableness of an accommodation at the summary judgment stage is whether such accommodation would *necessarily* eliminate an essential function of the job. *See School Board of Nassau County v. Arline*, 480 U.S. 273, 287 n. 17, 107 S.Ct. 1123, 1131 n. 17, 94 L.Ed.2d 307 (1987); *Tuck v. HCA Health Services of Tennessee, Inc.*, 7 F.3d 465, 47 (6th Cir.1993); *Bradley v. U. of Tex. M.D. Anderson Cancer Center*, 3 F.3d 922, 925 (5th Cir.1993); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1126 (11th Cir.1993). In determining whether an essential function of the job will be eliminated by the accommodation, it is necessary to define the essential functions. In our case, the district court and the majority opine that Jackson's regular attendance is itself an essential element and, therefore, that any accommodation which allows him to be absent on an irregular basis is unreasonable. This is erroneous for two reasons.

First, the fact that he did not exceed his accrued sick leave is important. Excessive absenteeism may very well not require accommodation. However, *sick leave is by its very nature unpredictable and irregular.*

As long as he was within the limits of that leave, he was like any other employee with an illness which does not amount to a handicap. Secondly, the essential function of Jackson's job appears to be less the actual presence of Jackson himself than the completion of his work.[5] This is different from *Guice–Mills*, where the plaintiff herself was needed at 8:00 a.m., as she was non-unionized and, therefore, was materially different from the other nurses. If it could be shown that Jackson's work could, without great difficulty or inconvenience, be shifted or taken on by others in exchange for his substitution later, it may be that an accommodation could be identified which would not amount to the elimination of an essential function of the job.

Even if the burden is on the plaintiff to prove the existence of a potentially viable reasonable accommodation, it appears that there has been a sufficient showing here to warrant a denial of the VA's request for summary judgment.[6] Jackson showed that there were options available to the VA, including altering his schedule, putting him on flex time, and allowing others to substitute for him on occasion. These adjustments may or may not allow him to complete all essential functions of his job, thereby amounting to reasonable accommodations. However, the question as to whether or not they are reasonable, and particularly whether they eliminate an essential element of the job, appears to rest on a genuine issue of material fact. Jackson has presented enough evidence to create a factual question as to whether the accommodation proposed was reasonable or not. *See Tuck v. HCA Health Services of Tennessee, Inc.*, 7 F.3d 465, 471 (6th Cir.

5. In *Overton v. Reilly*, 977 F.2d 1190 (7th Cir. 1992), the court found summary judgment to be inappropriate where there remained a genuine issue of material fact as to whether the element of the job eliminated by the accommodation requested by the plaintiff was actually essential. There the court said that even if the plaintiff was falling asleep on the job (due to his handicap), perhaps like being absent for parts of the day, as long as he completed all the essential functions of the job he could still be considered "otherwise qualified" under the Act. Here, there is a question as to whether Jackson himself need be in attendance, or whether schedule adjustments allowing the work to be completed at different times or by other employees would be reasonable

and not an undue burden. That is, there appears to be a question as to what exactly is the essential element of his job that might be eliminated by the requested accommodation, and whether it will in fact be eliminated.

6. This case may at some point turn on the burden of proof between the parties. This area of law under the Act is muddled at best. However, since the parties have not raised the issue of the proper assignment of the burden, and since I conclude that summary judgment was premature regardless of that assignment, it is not addressed here.

1993) ("Issues involving the essential elements of the job and reasonable accommodation are primarily factual issues."). *See also, McGregor v. Louisiana State Univ. Bd. of Sup'rs,* 3 F.3d 850, 855 (5th Cir.1993); *Arline v. School Bd. of Nassau County,* 772 F.2d 759, 764–65 (11th Cir.1985), *aff'd,* 480 U.S. 273, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987). In addition, summary judgment would seem to be particularly inappropriate here, where the VA has shown no interest in accommodating Jackson, and where no attempt has been made to determine the reasonableness of the requested accommodations. Frankly, I am disappointed that the VA, charged by Congress and the nation with the welfare of our veterans, made so little effort to accommodate this disabled Marine Corps veteran.

In sum, I disagree with my brothers on the appropriateness of summary adjudication by the district court. I am convinced that the district court erred in granting summary judgment in this case.