**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| TRISHA L. GORDON, | DOCKET NUMBER |
| Appellant, | DA-0752-13-0291-I-1 |
| v. | |
| NATIONAL AERONAUTICS AND SPACE ADMINISTRATION, | DATE: August 21, 2014 |
| Agency. | |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Trisha L. Gordon, Friendswood, Texas, pro se.

Harry J. Gruchala, Houston, Texas, for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Anne M. Wagner, Vice Chairman
Mark A. Robbins, Member

**FINAL ORDER**

The appellant has filed a petition for review of the initial decision, which sustained the agency's removal based on the charge of inability to perform the duties of her position and inability to maintain regular attendance for medical reasons. Generally, we grant petitions such as this one only when: the initial

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. *See* Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, and based on the following points and authorities, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. We AFFIRM the initial decision, except as MODIFIED by adjudicating the agency's allegations of inability to perform the duties of her position and inability to maintain regular attendance for medical reasons as separate charges and by concluding that the agency met its burden of proving both charges by preponderant evidence.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶2 The appellant was employed as an Accounting Technician, GS-7, in the agency's Office of the Chief Financial Officer at the Johnson Space Center in Houston, Texas. Initial Appeal File (IAF), Tab 3, Subtab 4c. The agency proposed to remove the appellant based on her inability to perform the duties of her position and her inability to maintain regular attendance for medical reasons. IAF, Tab 3, Subtab 4e at 1. The appellant did not respond to the proposal. IAF, Tab 3, Subtab 4d at 1. The deciding official sustained the charge and concluded that the appellant's removal was warranted. *Id.*

¶3 The appellant initiated a timely Board appeal challenging her removal. IAF, Tab 1. She claimed that the agency's action was the result of disability discrimination. IAF, Tab 8 at 1. The administrative judge issued an initial

decision that found the agency proved the appellant could not perform the duties of her position for medical reasons and affirmed her removal. IAF, Tab 12, Initial Decision (ID) at 10, 15. The administrative judge also found that the appellant did not prove her affirmative defense of disability discrimination. ID at 14-15.

¶4 The appellant has filed a petition for review. Petition for Review (PFR) File, Tab 1. The agency has filed a response in opposition to the petition for review, to which the appellant has replied. PFR File, Tabs 6-8.

We consider the agency's allegations of inability to perform the duties of her position and inability to maintain regular attendance for medical reasons as separate charges.

¶5 The agency removed the appellant based on conduct that it described as "inability to perform the duties of [her] position and . . . inability to maintain regular attendance for medical reasons." IAF, Tab 3, Subtab 4d at 1. The agency's allegations that the appellant was unable to maintain regular attendance refer to her absences from work throughout 2011 and during the months of January, February, and October 2012. IAF, Tab 3, Subtab 4e at 1-2. The agency's allegations that the appellant was unable to perform the duties of her position refer to the appellant's work performance and behavior since she was diagnosed with numerous serious medical conditions. *Id.* at 2-3.

¶6 The administrative judge construed this language as a single charge of inability to perform for medical reasons. ID at 2, 10; IAF, Tab 8 at 1. Where, as here, a single stated charge contains two separate acts of conduct that are not dependent on each other and do not comprise a single, inseparable event, each act constitutes a separate charge. *Alvarado v. Department of the Air Force*, 103 M.S.P.R. 1, ¶ 12 (2006). The Board has identified the charges of inability to perform duties and inability to maintain regular attendance as separate charges with unique elements. *Compare Combs v. Social Security Administration*, 91 M.S.P.R. 148, ¶ 13 (2002) (elements to establish charge of

inability to maintain regular attendance), *with Marshall-Carter v. Department of Veterans Affairs*, 94 M.S.P.R. 518, ¶ 10 (2003) (elements to establish charge of inability to perform due to medical reasons), *aff'd*, 122 F. App'x 513 (Fed. Cir. 2005).

¶7        Therefore, we consider below whether the agency met its burden of proving each of these charges separately by preponderant evidence.

The agency proved that the appellant was unable to maintain regular attendance for medical reasons.

¶8        As the administrative judge recognized, the agency's charge that the appellant was unable to maintain regular attendance for medical reasons concerned both unscheduled absences and absences that had been scheduled and approved.  ID at 9.  It is undisputed that the appellant was approved for advance sick leave and the voluntary leave program and that the agency had accommodated the appellant's leave requests and that she had taken 363 hours of leave, excluding holiday and excused leave, between June 19, 2011, and February 17, 2012.  IAF Tab 3, Subtab 4b at 3-9, 15-34.

¶9        As a general rule, an adverse action cannot be based on an employee's use of approved leave.  *Bair v. Department of Defense*, 117 M.S.P.R. 374, ¶ 5 (2012). However, the Board has held that an agency may bring an adverse action against an employee for excessive approved absences if the following criteria have been met:  (1) the employee was absent for compelling reasons beyond her control so that the agency's approval or disapproval was immaterial because the employee could not be on the job; (2) the absences continued beyond a reasonable time, and the agency warned the employee that an adverse action could be taken unless the employee became available for duty; and (3) the position needed to be filled by an employee available for duty on a regular, full-time or part-time basis.  *Id.* (citing *Cook v. Department of the Army*, 18 M.S.P.R. 610, 611-12 (1984)). Furthermore, in determining that removal based on an employee's incapacitation from duty promotes the efficiency of the service, the Board has found that an

absence for which no foreseeable end is in sight constitutes a burden which no employer can efficiently endure. *Bair*, [117 M.S.P.R. 374](#), ¶ 5.

¶10    Here, the agency does not dispute the appellant's contention that she was absent for compelling reasons beyond her control. Thus, the agency has proven the first element of the charge. Further, as discussed below, the agency established that the appellant's absences continued beyond a reasonable time. In proposing the appellant's removal, the agency reviewed her attendance for the years 2011 and 2012. It alleged that the appellant was absent for illness, medical treatments, and doctors' appointments approximately 20 percent of her working time in 2011. IAF, Tab 3, Subtab 4e at 1. The agency also alleged, and the appellant does not dispute, that on 16 of the 33 working days from January 1, 2012, until February 17, 2012, she was absent for all or part of the day due to illness or medical appointments. *Id.* The agency further referenced the appellant's denial of access to the facility beginning on February 17, 2012, after she made threatening comments in the workplace, and her submissions in October 2012, indicating that she was unable to return to work due to medical conditions until the second week of November 2012. *Id.* at 2.

¶11    In her petition for review, the appellant argues that some of her absences-those occurring from July 26, through November 16, 2011—were covered under the Family and Medical Leave Act (FMLA). PFR File, Tab 1 at 11. An agency bears the burden of proving that, in taking a leave-related disciplinary action, it properly denied an eligible employee leave under the FMLA. *Burge v. Department of the Air Force*, [82 M.S.P.R. 75](#), ¶ 13 (1999).

¶12    The agency included in its evidence a "Certification of Health Care Provider for Employee's Serious Health Condition (Family and Medical Leave Act)" form from the appellant's neurologist. IAF, Tab 3, Subtab 4b at 225-28. The form stated the appellant was incapacitated as of July 19, 2011, and would have follow-up treatment appointments. *Id.* at 227. Nonetheless, the appellant's attendance records indicate that she reported for duty for approximately 450

hours from July 26, through November 16, 2011, thus indicating that she was not completely incapacitated during this period. *Id.* at 19-25. Further, the record contains no specific request for FMLA leave in conjunction with that certification, and the agency also did not submit any evidence as to whether it approved or denied the appellant's FMLA leave request based on the medical certification completed by her neurologist. The agency, moreover, did not address the appellant's FMLA argument in its response to her petition for review. PFR File, Tab 6. Based on the record evidence, we find that the agency has not met its burden of demonstrating that it properly denied the appellant's requests for FMLA leave regarding those absences occurring between July 26, and November 16, 2011.

¶13 Nonetheless, even excluding those absences, we conclude that the agency has established that her absences extended beyond a reasonable time. As stated above, there is no dispute that on 16 of the 33 working days from January 1, 2012, until February 17, 2012, the appellant was absent for all or part of the day due to illness or medical appointments. Further, on February 17, 2012, the agency revoked the appellant's access to her work location because she reportedly made a threat of workplace violence. IAF, Tab 3, Subtab 4o. The agency advised the appellant that she could return to work when she submitted medical documentation verifying that she was not a threat to herself or others. *Id.* The appellant did not submit medical documentation meeting this requirement and she never attempted to return to work prior to November 14, 2012, when the agency proposed her removal. IAF, Tab 3, Subtab 4d at 1. Based on the foregoing, we conclude that the appellant's absence from duty in 2012, which included a continuous span of nearly 9 months, continued beyond a reasonable time.[2]

---

[2] The Clerk of the Board issued a show cause order directing the agency to submit evidence detailing the appellant's pay status for the period of February 17, 2012, through March 4, 2013. PFR File, Tab 9 at 3. The agency responded to the order with evidence that the appellant was in a paid administrative leave status from February 21, 2012 (the Tuesday following a 3-day holiday weekend beginning on February 18,

¶14    The agency also established that it warned the appellant that an adverse action could be taken unless she became available for duty. Thus, for example, the agency cautioned the appellant about the potential consequences of her poor attendance in its November 7, 2012 letter of "Concern Regarding Absence." IAF, Tab 3, Subtab 4f. The letter stated that the appellant's supervisor was concerned about the appellant's inability to be regular in attendance and "the effect [her] absence has had on the efficiency of the organization." *Id.* The letter added that the appellant had been "previously warned that unless [she became] available for duty on a regular, full[-] time basis, a 'fitness for duty' determination would be made and action may be initiated to remove [her] from [her] position and the federal service." *Id.*; *see Combs*, 91 M.S.P.R. 148, ¶¶ 15-16 (finding testimony and documents of multiple conversations with the appellant regarding attendance were sufficient evidence to show she was on notice of potential adverse action). The agency repeated this conclusion in its proposed removal. IAF, Tab 3, Subtab 4e at 3. As stated above, the appellant did not reply to the notice of proposed removal and so she did not rebut the statement in the agency's November 7, 2012 letter that she had been cautioned that she could be disciplined if her absences continued.

_____

2012), to October 16, 2012. She was charged 20 days of sick leave for the period of October 17, through November 14, 2012, excluding the November 12, 2012 holiday for which she received holiday pay. From November 15, 2012, until March 4, 2013, the appellant was again in a paid administrative leave status. PFR File, Tab 10, Subtab 1 at 40, 42, 44. The appellant did not respond to the agency's submission. The Board in *Abbott v. U.S. Postal Service*, 120 M.S.P.R. 294, ¶ 10 (2014), recently clarified that an agency's placement of an employee on enforced leave for more than 14 days constitutes an appealable suspension within the Board's jurisdiction, and overruled prior Board decisions adjudicating appeals of such actions using the jurisdictional framework for constructive suspensions. Nonetheless, the appellant did not attempt to appeal her placement on paid sick leave from October 17, through November 14, 2012, as a suspension or a constructive suspension, nor does she attempt to do so here. Thus, we need not address this issue on review.

¶15    In any event, we find that, even assuming that the agency did not notify the appellant, she was a seasoned employee with almost 25 years of service with the federal government when she was removed, and so she clearly knew that her poor attendance could result in discipline.    In *Stevens v. Department of the Army*, 73 M.S.P.R. 619, 624-25 (1997), we stated one of the essential functions of almost every government job is coming to work regularly and adhering to a regular work schedule.    Likewise, the U.S. Court of Appeals for the Federal Circuit has held that maintaining a regular work schedule, which involves consistently appearing for duty as scheduled, is such a fundamental obligation of employment that an employee's failure to maintain a regular schedule is a valid basis for serious disciplinary action.    *See Davis v. Veterans Administration*, 792 F.2d 1111, 1113 (Fed. Cir. 1986); *see also D'Leo v. Department of the Navy*, 53 M.S.P.R. 44, 51 (1992) (finding that removal for failure to maintain a regular and predictable work schedule promotes the efficiency of the service).

¶16    Here, the agency showed that the appellant's absences continued beyond a reasonable time and that the position needed to be filled by an employee available for duty on a regular, full-time or part-time basis. *See Carr v. Reno*, 23 F.3d 525, 530 (D.C. Cir. 1994) ("an essential function of any government job is an ability to appear for work" and it is unreasonable to ask an agency to countenance an employee's poor attendance); *Jackson v. Veterans Administration*, 22 F.3d 277, 279 (11th Cir. 1994) (an essential function of a job requires work attendance that is "reasonably regular and predictable" and not "unreliable and sporadic"); *Walders v. Garrett*, 765 F. Supp. 303, 310 (E.D. Va. 1991) (some degree of regular, predictable attendance is fundamental to most jobs), *aff'd*, 956 F.2d 1163 (4th Cir. 1992) (Table).    Based on the foregoing, we find that the agency has proven that the appellant was unable to maintain regular attendance.

<u>The agency proved that the appellant was unable to perform the duties of her position due to medical reasons.</u>

¶17    To establish a charge of physical inability to perform in a position that does not have medical standards or physical requirements, and is not subject to medical evaluation programs, an agency is required to prove a nexus between the employee's medical condition and observed deficiencies in her performance or conduct, or a high probability, given the nature of the work involved, that her condition may result in injury to herself or others. *Fox v. Department of the Army*, 120 M.S.P.R. 529, ¶ 25 (2014); *Marshall-Carter*, 94 M.S.P.R. 518, ¶ 10. In other words, the agency must establish that the appellant's medical condition prevents her from being able to safely and efficiently perform the core duties of her position. *See Fox*, 120 M.S.P.R. 529, ¶ 25.

¶18    In determining if the agency has met its burden, the Board will consider whether a reasonable accommodation exists that would enable the appellant to safely and efficiently perform those core duties. *See id.* However, for the limited purposes of proving the charge, the agency is not required to show that it was unable to reasonably accommodate the appellant by assigning her to a vacant position for which she was qualified; whether it could do so goes to the affirmative defense of disability discrimination and/or reasonableness of the penalty. *Id.* The administrative judge found that the agency proved that, due to her medical restrictions, the appellant was unable to perform the required duties of her position. ID at 10.

¶19    The appellant argues in her petition for review that the medical documentation reviewed by the agency's Medical Director was not current and did not reflect her current medical treatment. PFR File, Tab 8 at 3-4. The medical documentation relied on by the agency's Medical Director in his determination was dated from July through September 2011. *Id.* The appellant alleges that the Medical Director was not aware of how she was responding to

treatment that began in July 2011. *Id.* However, she provided no medical documentation in 2012 or 2013 to reflect that her restrictions had changed.

¶20    The agency's Medical Director provided an affidavit regarding his determination, in July 2012, that the appellant could not perform the essential functions of her position, and that no reasonable accommodations were available. IAF, Tab 3, Subtab 4a at 1-2. The Medical Director based his determination on the appellant's position description requirements, and the medical documentation the appellant provided when making a work accommodation request through the agency's Equal Employment Opportunity (EEO) Office. *Id.* at 1. The appellant was diagnosed with multiple autoimmune and hereditary disorders that result in weakness and fatigue, muscle spasms, and falls due to weakness in her extremities, requiring absences from work when her conditions flare up. IAF, Tab 3, Subtab 4b at 218, 226. Of particular focus by the Medical Director was the form dated August 17, 2011, completed by the appellant's treating physician. IAF, Tab 3, Subtab 4a at 2. The appellant's doctor noted a number of symptoms and diagnoses regarding the appellant's condition, that the appellant was incapacitated beginning on July 19, 2011, and that the doctor did not provide an end date for the condition. *Id.*

¶21    The core duties of a position are synonymous with its essential functions, i.e., the fundamental job duties of the position, not including marginal functions. *Fox*, 120 M.S.P.R. 529, ¶ 26 (citing 29 C.F.R. § 1630.2(n)(1)). A job duty may be considered essential for any of several reasons, e.g., because the reason the position exists is to perform that function, because of the limited number of employees available among whom the performance of that job function can be distributed, or because the function is highly specialized so that the incumbent is hired for his or her expertise or ability to perform the particular function. *Fox*, 120 M.S.P.R. 529, ¶ 26 (citing 29 C.F.R. § 1630.2(n)(2)). Evidence of whether a particular function is essential includes, inter alia, the employer's judgment as to which functions are essential, written job descriptions, the amount

of time spent on the job performing the function, and the consequences of not requiring the incumbent to perform the function. *Fox*, 120 M.S.P.R. 529, ¶ 26 (citing 29 C.F.R. § 1630.2(n)(3)).

¶22 In charging the appellant with inability to perform, the Deputy Chief Financial Officer indicated that the Accounting Technician in the Travel Accounting Group possessed the following essential functions:

> [T]o process the authorizations and expense reports through the Funds Certifier queue (the first queue in the travel system) and to serve as back up to the funding queue (the last queue in the travel system). These travel queues must be worked proactively throughout the day to ensure there is not a work stoppage in travel processing. The Travel Accounting Group is a highly visible customer service organization, so the work required by your position is important to the success of our mission.

IAF, Tab 3, Subtab 4e at 1. In his affidavit, the agency's Medical Director defined the appellant's job duties as "being responsible for examining, verifying, and maintaining a variety of time-critical travel documents, authorizations, and expense reports. Her position also required extensive interface and communication with customers and other team members during normal work hours." IAF, Tab 3, Subtab 4a at 1. Neither party submitted a copy of the appellant's position description. The appellant has not challenged the agency's description of her job duties, therefore, we consider those duties to be the core duties of her position.

¶23 The agency has established a nexus between the appellant's medical condition and observed deficiencies in performance. The appellant's last performance appraisal completed by the agency covered the period of May 1, 2010, to April 30, 2011. IAF, Tab 3, Subtab 4b at 127. Although the agency has not provided a more recent performance evaluation, the agency did submit evidence describing the consequences of the appellant's absences. *Id.* at 1-4; IAF, Tab 3, Subtab 4e at 2-3. The Chief of the Financial Services Branch submitted an affidavit regarding the adverse impact the appellant's absences have

had on the organization. IAF, Tab 3, Subtab 4b at 1-2. The Chief's affidavit references the additional time she was required to spend addressing the appellant's inquiries that could have been spent on other issues, along with the need for others in the unit having to do the appellant's duties when she was absent. *Id.* The agency also submitted the Chief's letter to human resources regarding the appellant. *Id.* at 3-9. In that letter, the Chief addressed how the appellant's absences have made it difficult to manage the work of the office and have affected other employees who were required to back her up in her absence. *Id.* at 3. The Chief also addressed the appellant's communication skills and need for improvement. *Id.* at 3-4. The Chief stated that the appellant had difficulty communicating with her management, team lead, coworkers, and customers, resulting in errors and additional work to resolve. *Id.* at 3. The agency's removal proposal contained similar information regarding the difficulty the appellant had in performing tasks and communicating with her management and team. IAF, Tab 3, Subtab 4e at 2-3. The proposal also referenced that her position required extensive interaction with customers and coworkers and that her inability to perform her position placed a severe burden on the remaining employees who had to cover her work. *Id.* at 3. We find the agency's evidence sufficient to establish that the appellant's absences had a negative effect not only on her performance, but also on the work group as a whole.

¶24    In October 2012, the attorney representing the appellant in her EEO complaint submitted two emails to the agency regarding the appellant and her potential to return to work. IAF, Tab 3, Subtabs 4h, 4i. In the first email, the attorney stated the appellant would not be able to return to work the next day due to her medical conditions. IAF, Tab 3, Subtab 4i at 1. The attorney stated that the appellant would return to work when she was able to do so. *Id.* The following day, the appellant's attorney sent a second email, which stated that the appellant would not be able to work for a period of time and that the appellant would provide medical documentation for the absence. IAF, Tab 3, Subtab 4h

at 1. There is no evidence in the record that the appellant ever provided the promised medical documentation for this absence.

¶25 For approximately 1 year prior to her removal, the appellant had the opportunity to provide the agency with medical documentation that she could return to work and perform the duties of her position with accommodation. However, she failed to provide any medical documentation even when notified of her potential removal. IAF, Tab 3, Subtab 4f. The record contains no evidence to suggest there was any foreseeable end to the appellant's absence. The Board has previously held that when the appellant is unavailable for duty due to her incapacitation and the unavailability has no foreseeable end, then removal of the employee is warranted. *Johnson v. U.S. Postal Service*, 120 M.S.P.R. 87, ¶ 4 (2013) (citing *Edwards v. Department of Transportation*, 109 M.S.P.R. 579, ¶ 15 (2008)). Here, the record did not suggest a foreseeable end to the appellant's inability to return to work. Therefore, we find that the agency proved the charge of inability to perform by preponderant evidence, and also proved the nexus of the charge to the efficiency of the service.

The penalty of removal was reasonable and promotes the efficiency of the service.

¶26 Generally, removal for physical inability to perform the essential functions of a position promotes the efficiency of the service. *D'Leo v. Department of the Navy*, 53 M.S.P.R. 44, 51 (1992). At the time of her removal, the appellant had over 20 years of service. IAF, Tab 3, Subtab 4c. For approximately a 1-year period up to her removal, the appellant did not provide evidence demonstrating her ability to return to work as required by the agency. The appellant did not provide medical evidence in response to the proposal to remove her despite the 3½ month period between the issuance of the proposal notice and notice of the decision to remove. IAF, Tab 3, Subtabs 4d, 4e. Nor did she provide any evidence of her ability to perform her duties in the context of the instant appeal.

¶27     In determining if removal is an appropriate penalty, the Board will consider whether the appellant could have been assigned to a vacant position within her medical restrictions. *Marshall-Carter*, 94 M.S.P.R. 518, ¶ 14. However, as discussed above, the record demonstrates that reassignment was not feasible. IAF, Tab 4, Subtab 4a at 2, Subtab 4e at 3. Based on the appellant's inability to perform the essential functions of the position and the lack of a foreseeable end to her inability to return to work, her removal will promote the efficiency of the service, and the penalty is sustained.

The appellant did not prove her affirmative defense that the agency engaged in disability discrimination.

¶28     The administrative judge found that the appellant was an individual with a disability, but concluded that she was not "qualified," and that the agency did not remove her based on her disability. ID at 12, 15. The appellant alleged disability discrimination based on denial of a reasonable accommodation. IAF, Tab 9 at 1-2. The Rehabilitation Act requires an agency to provide reasonable accommodation to the known physical or mental limitations of an otherwise qualified individual with a disability unless the agency can show that accommodation would cause an undue hardship on its business operations. *Clemens v. Department of the Army*, 120 M.S.P.R. 616, ¶ 10 (2014). With exceptions not applicable here, the term "qualified" means that the individual satisfies the requisite skill, experience, education, and other job-related requirements of the position the individual holds or desires and, with or without reasonable accommodation, can perform the essential duties of such position. *Id.*; 29 C.F.R. § 1630.2(m). Reasonable accommodation includes modifications to the manner in which a position is customarily performed to enable a qualified individual with a disability to perform the essential job functions, or reassignment of the employee to a vacant position whose duties the employee can perform. *Clemens*, 120 M.S.P.R. 616, ¶ 10.

¶29    The appellant has the burden to show that she is a qualified individual with a disability. *Henson v. U.S. Postal Service*, 110 M.S.P.R. 624, ¶ 7 (2009). We agree with the administrative judge that she has not done so. The appellant submitted a request for reasonable accommodation to the agency and provided medical information in support of her request. IAF, Tab 3, Subtab 4b at 218-96. The appellant requested to be absent for infusions four times a month for a period of 6 days per occurrence, not to have to return to work on the days of the infusions, to be absent when flare-ups occurred, and to be able to make up those missed hours. IAF, Tab 3, Subtab 4b at 218. The agency responded to the appellant's accommodation request, approving some requests for a 6-month trial period, and also requested that the Medical Director review the documentation to determine if additional accommodations were necessary. *Id.* at 220-22. The agency's Medical Director determined that there were no reasonable accommodations available to allow the appellant to perform the essential functions of her position. IAF, Tab 3, Subtab 4a at 2.

¶30    The appellant does not articulate how she would be able to perform the duties of her position that require extensive interaction with coworkers and customers based upon her request for a minimum of 24 days of absence per month to accommodate her disability. The appellant bears the burden of proving that an accommodation she seeks is reasonable. *Clemens*, 120 M.S.P.R. 616, ¶ 17. Based upon the evidence submitted, we find that the appellant's requested accommodation was not reasonable, and that she has not established that she could perform the duties of her position with or without reasonable accommodation.

¶31    As part of its obligation to reasonably accommodate the appellant's disability, the agency must consider whether it could reassign the appellant to a vacant position. *Gonzalez-Acosta v. Department of Veterans Affairs*, 113 M.S.P.R. 277, ¶ 14 (2010). The proposing official determined there were no available positions in the Office of the Chief Financial Officer that did

not require a predictable work schedule and involve extensive interaction with customers or coworkers. IAF, Tab 3, Subtab 4e at 3. The proposing official also stated that an agency human resource staff member had reviewed open positions at the agency to ascertain whether another position met her experience, education, and work restrictions, but determined that there was no such available position at the time. *Id.* The appellant has not identified any open positions for which she is qualified and of which she can perform the essential functions; therefore she has not met her burden to show that vacant funded positions existed to prove her claim of disability discrimination. *See Gonzalez-Acosta*, 113 M.S.P.R. 277, ¶¶ 16-17 (the appellant bears the ultimate burden of proof in a claim of disability discrimination and must show the accommodation sought is reasonable). Based upon the record evidence, we affirm the administrative judge's finding that the appellant did not prove her affirmative defense of disability discrimination.

## NOTICE TO THE APPELLANT REGARDING
## YOUR FURTHER REVIEW RIGHTS

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You have the right to request further review of this final decision.

Discrimination Claims: Administrative Review

You may request review of this final decision on your discrimination claims by the Equal Employment Opportunity Commission (EEOC). *See* Title 5 of the United States Code, section 7702(b)(1) (5 U.S.C. § 7702(b)(1)). If you submit your request by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit your request via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, NE
Suite 5SW12G
Washington, D.C. 20507

You should send your request to EEOC no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with EEOC no later than 30 calendar days after receipt by your representative. If you choose to file, be very careful to file on time.

Discrimination and Other Claims: Judicial Action

If you do not request EEOC to review this final decision on your discrimination claims, you may file a civil action against the agency on both your discrimination claims and your other claims in an appropriate United States district court. *See* 5 U.S.C. § 7703(b)(2). You must file your civil action with the district court no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with the district court no later than 30 calendar days after receipt by your representative. If you choose to file, be very careful to file on time. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of

prepayment of fees, costs, or other security. *See* [42 U.S.C. § 2000e5](f) and [29 U.S.C. § 794a].


FOR THE BOARD:                _____
                                                 William D. Spencer
                                                 Clerk of the Board

Washington, D.C.