**Ilmar PAEGLE, Plaintiff,**

v.

**DEPARTMENT OF the INTERIOR, et al., Defendants.**

Civ. A. No. 91–1075.

United States District Court, District of Columbia.

Feb. 8, 1993.

Arnold B. Schweizer, Rockeville, MD, for plaintiff.

Andrew Phelan, Atty. Civil Div., Federal Programs Branch, Dept. of Justice, Washington, DC, for defendants.

## MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

Before the Court are plaintiff's Motion for Partial Summary Judgment as to Counts I and II of his Amended Complaint and defendants' Motion for Partial Summary Judgment as to Count I and to Dismiss Counts II and III. There has been full discovery and the issues have been extensively briefed. For the reasons given below, we deny plaintiff's motion and grant defendants' motion.

### I. Background

Plaintiff, Ilmar Paegle, has been an officer with the United States Park Police ("Park Police"), a subdivision of the Department of Interior, for the last nineteen years. In November 1987, plaintiff was a "private" in the Alcohol/Speed Enforcement Unit within the Patrol Branch and took an exam offered to officers interested in promotion from "private" to "sergeant." Plaintiff was informed that, based on his test results and his paperwork, he ranked twenty-first on the list of candidates eligible for promotion and that he would be promoted in that rank order. Subsequently, the Park Police notified plaintiff that he was to be promoted on November 20, 1988, and solicited plaintiff's choice of patrol and communication sergeants' positions for the new assignment. Plaintiff informed the Park Police that he wished to be elevated to the patrol sergeant's position in District One.

Prior to his scheduled promotion, however, plaintiff injured his back while lifting equipment and was placed on sick leave and then on limited duty.[1] The first injury occurred in March 1988, and plaintiff returned to full duty in June 1988. Plaintiff reinjured his back in July 1988, while effecting an arrest, and was diagnosed by his

---

1. Park Police policy allows limited duty assignments when an approved physician determines that an officer cannot perform the full range of duties. *See* U.S. Park Police General Order 33.-06; Exhibit C to Defendants' Memorandum in Support of its Motion for Summary Judgment and to Dismiss ("Defendants' Motion"). Limited duty assignment permits the branch/field office commander to relieve the officer of the obligation to exercise police powers.

Plaintiff's limited duty status relieved him from a variety of law enforcement activities, such as making arrests and enforcing regulations. Plaintiff was also restricted from prisoner contact, heavy lifting, cold situations, and prolonged static positions.

physician as having Degenerative Disc Syndrome. Plaintiff was placed on limited duty at his own physician's recommendation from July 1988 through March 1989.

On November 7, 1988, before plaintiff was scheduled to take his new position, he was informed that he could not be promoted while on limited duty. A superior explained to plaintiff that it was a general, unwritten policy not to promote persons who were unable to perform the full range of police duties. Plaintiff was subsequently passed over for promotion on November 20, 1988, while five persons ranking below him on the list received promotions. He was eventually promoted to patrol sergeant on August 21, 1989, following his return to full duty on July 21, 1989.

Plaintiff filed the present suit in January 1991 to contest the nine month delay in his promotion. In Count I of his Amended Complaint, plaintiff alleges that defendants violated Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 791 *et seq.* (Supp. 1992), (hereinafter "Rehabilitation Act") by failing to reasonably accommodate his needs despite his known handicap. Plaintiff also alleges that the delay in promotion violated his rights under the Civil Service Reform Act ("CSRA"), 5 U.S.C. § 2301 *et seq.* (Supp.1992) (Count II), and under the due process and equal protection clauses of the Fifth Amendment (Count III). Plaintiff seeks an injunction awarding him back pay for the period between November 20, 1988 and August 21, 1989, placement on the sergeant's priority list dating from November 20, 1988, and costs and attorney's fees.

This matter comes before the Court upon dispositive motions filed by both parties. Plaintiff has moved for partial summary judgment with respect to Counts I and II, the handicap discrimination and CSRA claims respectively. Defendants have also moved for partial summary judgment with respect to the handicap discrimination claim, and have moved to dismiss Counts II and III primarily on the grounds that the Rehabilitation Act constitutes plaintiff's exclusive remedy.

## II. *Discussion*

### A. Rehabilitation Act Claim

In reviewing plaintiff and defendants' motions for summary judgment with respect to plaintiff's Rehabilitation Act claim, this Court may award summary judgment when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

In the present case, the parties do not dispute the facts, but differ over whether plaintiff has a valid cause of action under Section 504 of the Rehabilitation Act. That section provides, in part, that:

> No otherwise qualified individual with handicaps in the United States, as defined in section 706(8) of this title shall, solely by reason of her or his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

29 U.S.C. § 794(a) (Supp.1992). If the individual is a "qualified handicapped ... employee," government agencies employing such individuals are required to make "reasonable accommodation to the known physical or mental limitations." 29 C.F.R. § 1613.704(a) (1992).

Plaintiff alleges that the Park Police's denial of his promotion while he was on limited duty violated Section 504 of the Rehabilitation Act because 1) he was a handicapped individual as a result of his back injuries, 2) he was otherwise qualified for the rank of sergeant because not all sergeant positions required the exercise of general law enforcement duties, and 3) despite these facts, the Park Police failed to reasonably accommodate his handicap by assigning him to such a position. Because we find that plaintiff was neither "handicapped" nor "otherwise qualified" for the sergeant's position, plaintiff's Rehabilita-

tion Act claim is without merit.[2]

Plaintiff's argument fails from the start because he has failed to show that he was in fact "handicapped." At the time he was passed over, plaintiff appeared to believe, and certainly represented to the Park Police, that he suffered from a temporary injury rather than a permanent, disabling condition. Plaintiff described his first back injury as a spasm in his lower back that required temporary bed rest. *See* Plaintiff's Illness/Injury Record of April 25, 1988, Exhibit C to Plaintiff's Memorandum in Support of his Motion for Partial Summary Judgment ("Plaintiff's Motion"). Following a brief sick leave and temporary assignment to limited duty, plaintiff resumed his full duty activities on June 8, 1988. Even after the onset of his second back problem, which his physician diagnosed as Degenerative Disc Syndrome, his physician informed the Park Police that he believed "Mr. Paegle can return to full duty if he is asymptomatic for six months." *See* Letter of Dr. Gary Kaplan, Exhibit H to Plaintiff's Motion. Plaintiff did, in fact, return to full duty in July 1989 and was promoted to his requested position as patrol sergeant on August 21, 1989.

Plaintiff's temporary injury, although painful and disabling at the time, does not constitute a "handicap" for the purposes of the Rehabilitation Act. A handicapped person, under the definition of the Act, is one

who (i) has a physical or mental impairment which *substantially limits* one or more of such person's major life activi-

ties, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment.

29 U.S.C. § 706(8)(B) (Supp.1992) (emphasis added); 29 C.F.R. § 1613.702(a) (1992). Plaintiff neither meets the definition of "handicap" under the first or the third definitions.[3]

■ First, the Act identifies a handicap as a severe disability of a permanent nature. The handicap must limit one or more "major life activities," which are defined as "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. 1613.702(c) (1992). The regulations further define "physical or mental impairment" to include any of a number of permanent, disabling conditions.[4]

It is well established that the Act was never intended to extend to persons suffering from temporary conditions or injuries. "In general, a temporary condition is not considered a handicap under the Rehabilitation Act." *Visarraga v. Garrett,* No. C–88–2828, 1992 U.S.Dist. LEXIS 9164, at *13 (N.D.Cal. June 16, 1992) (holding that plaintiff's lower back strain-sprain was not a handicap under Rehabilitation Act). *See also Evans v. Dallas,* 861 F.2d 846, 852–53 (5th Cir.1988) (plaintiff's knee injury which required surgery but did not constitute "impairment of a continuing nature" was not a handicap); *Grimard v. Carlston,* 567 F.2d 1171, 1174 (1st Cir.1978) (fractured

---

**2.** Plaintiff's claim under the Rehabilitation Act might be dismissed because he has failed to name the proper parties. Since the Rehabilitation Act draws from the procedures of Title VII, 42 U.S.C. § 2000e–16(c), the only proper defendant is "the head of the department, agency or unit." *See, e.g., Barsten v. Dep't. of Interior,* 896 F.2d 422, 423 (9th Cir.1990) (plaintiff, in handicap discrimination suit, "should have named the Secretary of the Interior, not the Department of Interior, as the defendant in his complaint.").

Presuming that plaintiff would refile his case with the appropriate parties, we have decided, however, to address the merits of the claim for purposes of efficiency.

**3.** Plaintiff makes no argument that he is "handicapped" under the second definition beyond saying that he "has a history of back problems."

*See* Plaintiff's Motion at 7. The record does not demonstrate, however, that there was any history of the problem prior to the incidents in question.

**4.** Specifically, 29 C.F.R. § 1613.702(b) provides that

Physical or mental impairment means (1) any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: Neurological; musculoskeletal; special sense organs' cardiovascular; reproductive; digestive; genito-urinary; hemic and lymphatic; skin; and endocrine; or (2) any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities.

and dislocated ankle not a handicap); *Saffer v. Town of Whitman*, No. 85–4470, 1986 WL 14090, at *1 (D.Mass Dec. 2, 1986) (temporary condition such as pregnancy not a handicap). Because plaintiff never represented his back injury as anything but a temporary disablement, he cannot be considered "handicapped" under the first definition of that term.

Nor has plaintiff, secondly, established that he was "regarded as having such an impairment." Plaintiff argues that, by placing him on limited duty, defendants acknowledged that he had a handicap. All evidence indicates, however, that the Park Police placed him on limited duty with the expectation that he would soon recover, having been informed by plaintiff and his doctor that plaintiff's condition was temporary. In fact, had plaintiff's superiors considered plaintiff to be permanently disabled, they would have terminated his employment rather than place him on limited duty.[5]

■ We find, additionally, that even if we considered plaintiff "handicapped" for the purposes of the Rehabilitation Act, he has not established that he was a "qualified handicapped person" for the position of sergeant. A "qualified handicapped person" is one

who, with or without reasonable accommodation, can perform the essential functions of the position in question without endangering the health and safety of the individual or others.

29 C.F.R. § 1613.702(f). *See also Southeastern Community College v. Davis*, 442 U.S. 397, 407, 99 S.Ct. 2361, 2367, 60 L.Ed.2d 980 (1979) (An "otherwise qualified person is one who is able to meet all of a program's requirements in spite of his handicap.").

Plaintiff has not demonstrated that he was able to meet all the essential functions of being a sergeant "in spite of" his handicap. With the exception of those on limited duty, all Park Police officers, including sergeants, must be able to fully perform law enforcement functions.[6] The Mission and General Policy Statement of the Park Police explicitly provides:

Whenever the Force believes a crime has been committed or is about to be committed, it is our responsibility and obligation to prevent, suppress, investigate, or solve the crime *wherever we may be assigned* within the National Park Service.

*See* Exhibit X to Defendants' Motion, at 4. As noted above, the physical qualification standard within the Park Police disqualifies any officer unable to perform law enforcement duties due to a physical disability. *See* note 5 *supra.* Since plaintiff was not able to perform these duties, he was not "otherwise qualified" for any sergeant's position.

Having determined that plaintiff was neither "handicapped" nor "otherwise qualified" for the purposes of the Rehabilitation Act, there was no obligation upon defen-

---

**5.** Defendants have established that there is a general requirement that all Park Police officers be physically fit and a policy that officers who do not meet that requirement must be terminated.

General Order 32.02 states that all members of the police force "are always on duty." *See* Exhibit W to Defendant's Motion. To this end, the Park Police established a physical qualification standard providing that

[a]ny physical or mental condition which would hinder full efficient performance of the duties of these positions, or which would cause the individual to be a hazard to himself, herself, or to others, is disqualifying.

Memorandum from Chief Medical Division, Exhibit R to Defendants' Motion.

Lynn Herring, Chief of Police for the Park Police, explained that had the District Police

and Fire Retirement Board determined that Sgt. Paegle were disabled, he would have to be retired by law. *See* Deposition of Lynn Herring, Exhibit B to Defendants' Motion, at 28.

**6.** Plaintiff contends that this requirement does not extend to all positions as sergeant. *See* Plaintiff's Motion at 11. He asserts that the position of sergeant in the Communications Section, for example, would involve only administrative and managerial duties and would not require the exercise of law enforcement powers. *See id.* at 11–12. He further urges that "reasonable accommodation" would require his reassignment to such a position.

Plaintiff's characterization is refuted, however, by the written policy in General Order 32.03 that all positions carry law enforcement duties. *See* note 5 *supra.*

dants pursuant to 29 C.F.R. § 1613.704(a) to accommodate plaintiff by promoting him while he was on limited duty. Since plaintiff has failed to establish the essential elements of his claim, summary judgment must be entered for defendants on Count I.

### B. CSRA Claim

■ Plaintiff has also moved for summary judgment on Count II of his Amended Complaint, which alleges a violation of the Civil Service Reform Act ("CSRA"), 5 U.S.C. § 2301 *et seq.* (Supp.1992). That Act regulates employee-manager relations in federal government, in part by establishing "merit systems principles" and "prohibited personnel practices." Specifically, plaintiff contends that the delay in his promotion violates the merit systems principles of section 2301 requiring "fair and equitable treatment" without regard to any "handicapping condition." [7]

Defendants have filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1), arguing, properly, that this Court lacks jurisdiction to hear plaintiff's CSRA claim. This Circuit, among many other circuits, has long held that there is no implied right of action under the CSRA allowing plaintiff to remedy alleged violations of the merit systems principles in federal district court. *See Borrell v. U.S. International Communications Agency,* 682 F.2d 981, 988 (D.C.Cir.1982) ("Congress did not mean to allow the district courts any extensive supervisory jurisdiction over the way in which the CSRA's mandates are enforced"); *see also Schrachta v. Curtis,* 752 F.2d 1257 (7th Cir.1985); *Veit v. Heckler,*

746 F.2d 508 (9th Cir.1984); *Braun v. United States,* 707 F.2d 922 (6th Cir.1983). Rather, Congress established in the Act "a detailed enforcement scheme to effect its purpose," requiring that plaintiff petition the Office of Special Counsel ("OSC") to review claims of prohibited personnel practices and seek correction before the Merit Systems Protection Board ("MSPB").[8] *Borrell,* 682 F.2d at 987. Since plaintiff has failed to exhaust the appropriate administrative remedies for a CSRA claim, this Court is obliged to dismiss plaintiff's claim for lack of jurisdiction.

### C. Constitutional Claims

■ Finally, Count III of plaintiff's Amended Complaint alleges a violation of the equal protection and due process clauses of the Fifth Amendment. "Discriminatory employment policies and practices such as denying promotion because of handicap are in violation of Plaintiff principals [sic] of equal protection incorporated in the fifth amendment ... The practices of Defendants's [sic] create a categorical and irrebuttable presumption against promotion of handicapped employees in violation of the due process clause of the Fifth Amendment ..." Amended Complaint ¶ 34.

■ Defendants maintain that plaintiff's constitutional claims must be dismissed because the Rehabilitation Act is plaintiff's exclusive remedy. We agree that when a federal employee seeks to redress rights guaranteed by the Rehabilitation Act, that Act preempts other actions to redress the same discrimination. *See Shirey v. De-*

---

**7.** The merit system principles in Section 2301 provide, in part:

(1) Recruitment should be from qualified individuals from appropriate sources in an *endeavor to achieve a work force from all* segments of society, and selection and advancement should be determined solely on the basis of relative ability, knowledge, and skills, *after fair and open competition which* assures that all receive equal opportunity.

(2) All employees and applicants for employment should receive fair and equitable treatment in all aspects of personnel management without regard to political affiliation, race, color, religion, national origin, sex, marital status, age, or handicapping condition,

and with proper regard for their privacy and constitutional rights.

5 U.S.C. 2301(b).

**8.** Employees seeking to remedy action by a federal agency which constitutes a "prohibited personnel practice" must file that complaint with the OSC. *See* 5 U.S.C. 1214(a)(1)(A). If the OSC believes that such a practice has occurred, it may seek corrective action by the MSPB. *See* 5 U.S.C. § 1214(b)(2)(B). Plaintiff may file a claim in Federal District Court only when seeking review of an MSPB decision regarding a "prohibited personnel practice" involving discrimination. *See* 5 U.S.C. § 7702.

*vine,* 670 F.2d 1188, 1191 n. 7 (D.C.Cir. 1982) (noting similarities between Title VII and Rehabilitation Act and extending principle that Rehabilitation Act would provide exclusive remedy for handicap discrimination claims).

In considering plaintiff's constitutional claims, "the pertinent inquiry is whether plaintiff is 'seek[ing] to redress the violation of rights guaranteed by the [Rehabilitation Act].'" *Thorne v. Cavazos,* 744 F.Supp. 348, 351–52 (D.D.C.1990) (citing *Davis v. Passman,* 442 U.S. 228, 247 n. 26, 99 S.Ct. 2264, 2278 n. 26, 60 L.Ed.2d 846 (1979)). "In other words, plaintiff can only pursue his constitutional claims if the applicable statutes do not afford him a remedy for the violations he is seeking to redress." *Id.%*

■ Since plaintiff's equal protection and fifth amendment claims [9] are also based on alleged claims of handicap discrimination, the Rehabilitation Act would redress the alleged violations and would therefore be his exclusive remedy. Accordingly, plaintiff's constitutional claims must be dismissed.

*Conclusion*

For the reasons given above, this Court denies plaintiff's Motion for Partial Summary Judgment on Counts I and II of his Amended Complaint and grants defendants' Motion for Summary Judgment on Count I and to Dismiss Counts II and III.

---

**9.** Plaintiff's claim that he was denied a hearing before he was passed over lacks merit because the mere denial of promotion does not give rise to constitutional right to a hearing. *Arnett v. Kennedy,* 416 U.S. 134, 155, 94 S.Ct. 1633, 1644, 40 L.Ed.2d 15 (1974).