**Margaret SIDARIS, Plaintiff,**

v.

**Marvin T. RUNYON, etc., Defendant.**

**Civil Action No. 96–D–003–N.**

United States District Court,
M.D. Alabama,
Northern Division.

Feb. 27, 1997.

---

William B. Schell, Jr., Richard P. Rouco, Birmingham, AL, for Plaintiff.

Redding Pitt, U.S. Attorney, Ann Ashton Holmes, Asst. U.S. Atty., Montgomery, AL, for Defendant.

## MEMORANDUM OPINION

DE MENT, District Judge.

Before the court is the Defendant's motion for summary judgment, filed December 3, 1996. The Plaintiff responded in opposition on January 13, 1997. The Plaintiff also filed a supplemental response on January 17, 1997. After careful consideration of the arguments of counsel, the relevant case law, and the record as a whole, the court finds that Defendants' motion for summary judgment is due to be granted.

## JURISDICTION

Based upon 28 U.S.C. §§ 1331 and 1343, the court properly exercises subject matter jurisdiction over this action. The parties do not contest personal jurisdiction or venue.

## FACTUAL BACKGROUND

Plaintiff Margaret Sidaris worked as a mail carrier for the United States Postal Service ("Service") for approximately twenty-seven years before she was terminated on August 5, 1994. On August 5, 1994, in two separate letters, the Service placed Plaintiff on a thirty-day emergency suspension and informed her that she was to be terminated effective September 7, 1994. In the Plaintiff's Notice of Removal, Jimmy Hughes ("Hughes"), the Plaintiff's manager, informed the Plaintiff of the reasons for her termination: (1) inability to safely perform duties in a postal environment; (2) inability to meet the physical requirements of Plaintiff's City Letter Carrier position; (3) Plaintiff's failure to report a work injury in a timely fashion; and (4) improper conduct. On May 15, 1995, an independent arbitrator issued an opinion supporting Plaintiff's termination but finding that her emergency suspension was invalid and requiring the Service to compensate Plaintiff for her lost pay between August 5, 1994, and September 7, 1994. On June 13, 1995, Plaintiff applied to the Office of Personnel Management ("OPM") for disability retirement. On October 11, 1995, Plaintiff's application for retirement was approved. Plaintiff filed a formal equal employment opportunity ("EEO") complaint on March 12, 1995, and timely filed this complaint on January 2, 1996.

Plaintiff experienced a series of workplace injuries during her last four years of employment with the Service, including a recurring problem with heat exhaustion and stress-induced injuries. Plaintiff also suffered from hypertension throughout her entire employment with the Service. In addition, Plaintiff had recurring minor injuries involving lifting or other daily duties. The Service alleges that Plaintiff had fifteen workplace injuries over the last four years and that this injury total far surpassed the injury count for any other Montgomery area Service employee. The Service contends that these repeated injuries made Plaintiff a danger to herself and others. The Service contends that Plaintiff missed as much as one-third of the work days during this four-year period due to workplace injuries or illnesses. The Plaintiff, however, argues that these injuries were largely minor, inconsequential bumps and scrapes which resulted in little or no lost time. Defendant also contends that Plaintiff was unable to fulfill the physical requirements of her letter carrier position which required a temporary two week light duty assignment in July 1994.

In addition to alleging that Plaintiff's physical problems and absences interfered with her work, Hughes also alleges that the Plaintiff behaved improperly at work by using a racial slur during a discussion occurring approximately two weeks prior to the notice of removal. Hughes also claims that Plaintiff filed an untimely notice of injury by waiting eight days to report a work-related injury. Finally, Hughes also accuses Plaintiff of behaving improperly by unnecessarily involving herself in a possible incident of employee misconduct without notifying her supervisor of the incident. The Plaintiff counters each of these charges by offering her own evidence and examples.

Plaintiff brings her three-count complaint against Marvin T. Runyon ("Defendant"), the Postmaster General, in his official capacity as the Post Master General/CEO of the Service. The Plaintiff's first count alleges that the Service failed to properly accommodate her physical limitations which resulted in discrimination in violation of §§ 501 and 504 of the Rehabilitation Act of 1979 (29 U.S.C.A. §§ 791 and 794). Her second count alleges that Hughes retaliated against her because she exercised her Title VII right to be free from sexual harassment. Specifically, Plaintiff contends that her removal and emergency suspension was in retaliation for an EEO complaint she had filed two weeks earlier charging Hughes and Woolfolk with sexual harassment.

The Plaintiff's third count alleges that Defendant violated her rights under the Family Medical Leave Act ("FMLA"), 29 U.S.C.A. § 2617 (West Supp.1996), by terminating her employment to prevent her from exercising her rights under the FMLA. The Plaintiff alleges that she asked Hughes twice for information about the FMLA. She wanted the information because her son was awaiting a liver transplant which would require her to spend time away from work. She contends that Hughes not only failed to provide the requested information but also that he based her termination upon a desire to prevent her from exercising her potential FMLA rights.

### SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510; *see also Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions in the file, together with affidavits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552–53. Once this initial demonstration under Rule 56(c) is made, the burden of production, not

persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553; *see also* Fed.R.Civ.P. 56(e).

In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356; *see also Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510–11.

## DISCUSSION

While the parties may desire it, the court cannot and will not review the Service's decision to terminate the Plaintiff. The Plaintiff sought to have this decision overturned and a neutral arbitrator denied her appeal. This action concerns many of the events involved in the Plaintiff's dismissal, but it does not turn on the validity of that dismissal. Instead, the Plaintiff alleges that various aspects of her dismissal offend federal statutes designed to protect American workers. While separating these federal claims from the dismissal is difficult, it is crucial to this decision.

*Plaintiff's Rehabilitation Act Claim*

■ Section 504 of the Rehabilitation Act of 1973 ("Act"), 29 U.S.C.A. § 794(a) (West Supp.1996), states that:

> No otherwise qualified handicapped individual shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

To prove a violation of the Act, the Plaintiff must show that: (1) she was an individual with a handicap; (2) she was otherwise qualified; (3) she worked for a program that received federal financial assistance; and (4) she was treated adversely solely because of the handicap. *See Jackson v. Veterans Admin.*, 22 F.3d 277, 280–81 (11th Cir.1994). The Defendant does not dispute the third or fourth elements so the court will presume that these elements are satisfied.

■ The Defendant insists that the Plaintiff is not "handicapped" under the terms of the Act which is defined as "one who: (i) Has a physical or mental impairment which substantially limits one or more of such person's major life activities; (ii) Has a record of such an impairment; or (iii) Is regarded as having such an impairment." 29 U.S.C.A. § 706(8)(B) (West Supp.1996); 29 C.F.R. § 1614.203(a)(1) (1996). Major life functions include activities such as "caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1614.203(3) (1996). The Plaintiff contends that her disability was caused by a combination of conditions including hypertension, wrist, ankle, and back injuries, and susceptibility to heat exhaustion.

The Defendant argues that Plaintiff's hypertension is not a disabling condition because it can be controlled by medication and does not substantially limit a major life activity. However, the Defendant fails to discuss the Plaintiff's other afflictions. The Defendant also makes much of the fact that the Plaintiff testified at her arbitration hearing that she was ready to return to work with no restrictions as of September 13, 1995. The Defendant claims that the Plaintiff's reversal of position clearly demonstrates that her problems were minor and temporary.

However, OPM approved Plaintiff's application for disability retirement and as part of that process Hughes on June 6, 1995, represented to OPM that Plaintiff was "[u]nable to work outdoors if temperature exceeds 80 [degrees] ." Pl. Br. Opp. Ex. 26 (Standard Form 2824 B dated June 6, 1995, certified by Jimmy R. Hughes). Hughes also noted that it was "[i]mpossible to accommodate employ-

ee's restrictions" because "[t]here are no jobs within [the] carrier craft which do not require working outdoors in temperatures exceeding 80 [degrees]." *Id.* Additionally, in other portions of his brief, the Defendant argues that the Plaintiff's representation of disability is binding and therefore the Plaintiff is estopped from later claiming that she is now "okay" and ready to return to work.

Based upon this evidence, the court finds that the Plaintiff was disabled. Her medical condition prevented her from working in the heat of the Montgomery summer, which according to Hughes was a major component of her position. This inability impacted the Plaintiff's ability to work which is clearly defined as a major life activity. Therefore, the court finds that Plaintiff is disabled within the framework of the Act. *See Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1125–26 (11th Cir.1993); *McCollough v. Atlanta Beverage Co.,* 929 F.Supp. 1489, 1496–98 (N.D.Ga.1996) (finding plaintiff was disabled where plaintiff had a "bad back" which prevented him from performing many of the required functions of his position); *cf. Paegle v. Department of the Interior,* 813 F.Supp. 61, 64–65 (D.D.C.1993) (finding that plaintiff was not disabled where he suffered from a temporary condition which employer also regarded as temporary); *Mackie v. Runyon,* 804 F.Supp. 1508, 1510–11 (M.D.Fla.1992) (finding that plaintiff was not disabled where the plaintiff was able to stabilize her medical condition with medication, work a daytime shift without problem, and submitted no evidence of adverse impact on her past work history or employer perception of a disability).[1]

■ For a plaintiff to be considered "otherwise qualified" he must be "able to meet all of a program's requirements in spite of his handicap." *Southeastern Community College v. Davis,* 442 U.S. 397, 406, 99 S.Ct. 2361, 2367, 60 L.Ed.2d 980 (1979); *see also Jackson,* 22 F.3d at 281. The Eleventh Circuit has adopted a two-step approach to resolving this question. *Jackson,* 22 F.3d at 281. In the first step, the court determines if the plaintiff can perform the essential functions of the job in question. *Id.* If so, then the plaintiff is considered otherwise qualified. *Id.* "If not, the court must determine 'whether any reasonable accommodation by the employer would enable [plaintiff] to perform those functions.'" *Id.* (quoting *Chandler v. City of Dallas,* 2 F.3d 1385, 1394 (5th Cir. 1993)); see *also School Bd. of Nassau County, Fla. v. Arline,* 480 U.S. 273, 287 n. 17, 107 S.Ct. 1123, 1131 n. 17, 94 L.Ed.2d 307 (1987).

■ Essential functions are "those functions that the individual who holds the position must be able to perform unaided or with the assistance of a reasonable accommodation." 29 C.F.R. Pt. 1630, App. § 1630.2(n) (1996). It is not enough for an employer to merely label a function essential; instead, the employer must "actually require[ ] employees in the position to perform the functions that the employer asserts are essential." *Id.* Performing essential functions means that an employee is "able to perform those functions without risk of serious physical harm to oneself or others." *Fitzpatrick,* 2 F.3d at 1126.

A letter carrier is "responsible for the prompt and efficient delivery and collection of mail on foot or by vehicle under varying conditions in a prescribed area or on various routes." Def.'s Br. Supp. Mot. Summ. J. Ex A, Attachment 4, at 1 (Qualification Standards—Bargaining Unit Positions including City or Special Carrier). Letter carriers may be required to either drive a motor vehicle or carry the mail in a satchel and "must serve in all kinds of weather." *Id.* Prior to appointment, letter carriers must pass a physical test showing that applicants are "able to perform efficiently the duties of the position which requires arduous exertion involving prolonged standing, walking, and reaching." *Id.*

The Plaintiff was unable to fulfill her duties as a letter carrier. The record is replete with evidence that the Plaintiff was unable to perform her duties during the summer months. On May 26, 1994, Plaintiff filed

---

1. Additionally, the Plaintiff was clearly perceived by the Defendant as being disabled since the Defendant felt that Plaintiff could no longer perform her required job functions. This perception accords the Plaintiff with disabled status under the Act. *See Cook v. State of R.I., Dep't of Mental Health, Retardation, and Hosps.,* 10 F.3d 17, 22–26 (1st Cir.1993).

an accident report claiming that she suffered from stress resulting from a meeting with her supervisor and heat exhaustion. On June 29, 1994, Dr. Karen Edwards–Crawford ("Dr. Crawford"), Plaintiff's physician, wrote a letter to the Service requesting that Plaintiff be placed on light duty in order "to decrease the length of exposure to extremely hot temperatures." At some point, the Plaintiff also submitted a light duty request requesting that she be placed on light duty until September 22, 1994. On July 11, 1994, Dr. Crawford signed a "Medical Clearance to Return to Full Duty or Light Duty" form which stated that the Service should try to avoid having Plaintiff work "outdoors during warm weather" and defined warm weather as weather with temperatures greater than eighty degrees Fahrenheit. Plaintiff also filed two prior accident reports claiming that she suffered from heat exhaustion. Pl.'s Br. Opp'n Ex. 3 and Ex. 11. Additionally, Hughes testified in his deposition that during the summers of 1991, 1992, and 1993, Plaintiff had either had an episode of heat exhaustion or been injured so that she could not work during the summer months. Hughes Depo. at 91–92. Hughes claims that he felt that he could not "assign [Plaintiff] to street duties when the temperature was over 80 degrees." *Id.* at 92.[2]

Based upon this evidence, the court finds that the Plaintiff was unable to perform an essential duty of her position. A letter carrier's primary function is to deliver the mail. These deliveries must be made in all types of weather. The Plaintiff was unable to make her deliveries during the summer months when the temperatures average eighty degrees or higher. *See* Def.'s Br. Mot. Summ. J. Ex. A—Attachment 5. Such an inability runs counter to the Plaintiff's job description.

■ Since the Plaintiff is unable to fulfill the essential functions of her position, the court must move to the second step of the Eleventh Circuit test and determine " 'whether any reasonable accommodation by the employer would enable [plaintiff] to perform those functions.' " *Jackson,* 22 F.3d at 281 (further citation omitted). The key to assessing the reasonableness of a possible accommodation is determining "whether such accommodation would necessarily eliminate an essential function of the job." *Id.* at 283 (citing *School Board of Nassau County v. Arline,* 480 U.S. 273, 287 n. 17, 107 S.Ct. 1123, 1131 n. 17, 94 L.Ed.2d 307 (1987)). As discussed previously, delivery of the mail during hot temperatures is an essential element of the Plaintiff's position. Plaintiff has not offered an accommodation possibility that preserves this essential job function. Instead, her accommodation requests center around a permanent light-duty assignment similar to the one she temporarily occupied prior to her termination.

■ An employer is under no obligation to eliminate or reallocate an essential job function in order to accommodate a disabled employee. *McCollough,* 929 F.Supp. at 1501; *Larkins v. CIBA Vision Corp.,* 858 F.Supp. 1572, 1583 (N.D.Ga.1994). Therefore, Defendant is under no obligation to revamp the city carrier position so that it avoids any exposure to summertime weather conditions. However, the Plaintiff contends that the Defendant properly accommodated the Plaintiff by assigning her to light-duty which required her to "case" her route and help load the route delivery truck in the morning and then "case" mail at the general mail facility in the afternoon. The Defendant argues that the Plaintiff's light-duty assignment was merely temporary and that the Defendant had no obligation to continue this assignment or to convert it to a permanent light-duty assignment. However, Plaintiff argues that the Defendant has made several such transfers in the Montgomery area and should do the same for her.

■ An employer has no duty to create a new light-duty position in order to ac-

---

2. Although the Plaintiff claimed during her hearing before the arbitrator that she was cleared to return to work as of September 1994, the Plaintiff concedes that her doctor released her only after 1994's hot weather passed. Pl.'s Aff. ¶ 18.

The court finds that this "release to full duty" was not a complete release but instead contained an acknowledgment that the Plaintiff was still unable to perform her duties during the summer months.

commodate a handicapped employee.[3] However, if the employer has previously accommodated other handicapped employees and then refuses to extend such accommodation to the complaining employee, the outcome is less clear. *Valdez v. Albuquerque Public Schools*, 875 F.Supp. 740, 745–46 (D.N.M.1994) (finding in ADA action that "employers are obliged to follow their existing policies with regard to the accommodation of employees who become disabled"). However, the weight of authority dictates that an employer's benevolent treatment of other handicapped employees does not force the employer to extend beneficial treatment to subsequent handicapped employees. *Myers v. Hose*, 50 F.3d 278, 284 (4th Cir. 1995) (holding that the offering of a certain type of accommodation to one employee does not mean that as a matter of law such accommodation must be extended to a subsequent employee); *Vande Zande v. State of Wis. Dept. of Admin.*, 44 F.3d 538, 545 (7th Cir.1995) (holding that an employer who accommodates one disabled worker "must not be punished for its generosity by being deemed to have conceded the reasonableness of" such an accommodation in the future); *McCollough v. Atlanta Beverage Co.*, 929 F.Supp. 1489, 1504–05 (N.D.Ga. 1996) (finding in ADA action that an employer is required to assign disabled employees to light-duty positions only if employer has a "regular practice or policy of reassigning nondisabled employees who can no longer perform their job"); *Cheatwood v. Roanoke Industries*, 891 F.Supp. 1528, 1539 (N.D.Ala.1995) (finding in ADA action that

requiring employers to offer accommodations offered to other employees would "discourage employers from treating disabled employees in a spirit that exceeds the mandates of federal law"). Based upon the weight of case law, the court finds that the Defendant is not, as a matter of law, required by the Act to assign Plaintiff to a permanent light-duty or continuing temporary light-duty position as it may have done in the past. To find otherwise will result in employers making no effort beyond that mandated by the Act to accommodate an employee for fear that each new accommodation will raise the standard for subsequent reasonable accommodation efforts.

■ Plaintiff argues that the reasoning of the decision in *Howell v. Michelin Tire Corp.*, 860 F.Supp. 1488, 1491–93 (M.D.Ala. 1994), requires the court to find that the Defendant has an obligation to place the Plaintiff in an available light-duty assignment. While agreeing with the determination that an employer's reasonable accommodation obligation under the Act includes the transfer of a disabled employee to a vacant light-duty position, *but see Williams v. Avnet, Inc.*, 910 F.Supp. 1124, 1134 (E.D.N.C. 1995) (holding that ADA language discussing job reassignment does not carry the force of law because the ADA's active verb is "may" when discussing job reassignment), *aff'd sub nom., Williams v. Channel Master Satellite Sys., Inc.*, 101 F.3d 346 (4th Cir.1996), the court is unable to follow the *Michelin* court's decision in the instant action.[4] Unlike the

---

**3.** The Plaintiff urges the court to consider the Plaintiff's light-duty position at the time of her termination as that position for which her qualifications must be judged. *See Taylor v. Garrett*, 820 F.Supp. 933, 938–39 (E.D.Pa.1993) (finding that to allow an employer to dismiss a plaintiff because he was not otherwise qualified for his original position after the plaintiff had been transferred to a light-duty position that he could adequately perform "would make nonsense out of the [Rehabilitation] Act."). Plaintiff argues that she met the essential qualifications for the light-duty position that she served in prior to her termination. Therefore, she argues that she was "otherwise qualified" by virtue of her ability to effectively perform the essential functions of her light-duty position. The court finds that the position in question for terms of evaluating the Plaintiff's "otherwise qualified" status is the City Car-

rier position and not the Plaintiff's light-duty position. *See McCollough*, 929 F.Supp. at 1499–1502 (finding plaintiff was disabled by evaluating his assigned position and not the light-duty positions he had previously performed); *Paegle v. Department of the Interior*, 813 F.Supp. 61, 65 (D.D.C.1993) (considering plaintiff's assigned position and not his light-duty assignment to determine plaintiff's qualification status); *Carty v. Carlin*, 623 F.Supp. 1181, 1188–89 (D.Md.1985) (limiting "position in question" to the position held by the plaintiff and not to include other position throughout the company).

**4.** While at one point it did not require reassignment to a vacant position, the Act was amended in 1992 so that the standards espoused under Title I of the ADA were made the standards for a violation of the Act. *See Carty v. Carlin*, 623

*Michelin* ADA plaintiff, the Plaintiff did not request a permanent transfer to a light-duty assignment or another "craft." *See Shiring v. Runyon*, 90 F.3d 827, 832 (3d Cir.1996) (holding that reassignment of a postal employee was not required when among other things the court could not find "beyond [plaintiff's] vague allegations in his deposition, that any transfers were requested"); *Michelin*, 860 F.Supp. at 1492. Moreover, unlike the *Michelin* plaintiff, she is covered by a collective bargaining agreement which significantly impacts job reassignments under the Act. *Jasany v. U.S. Postal Serv.*, 755 F.2d 1244, 1251–52 (6th Cir.1985) ("An employer cannot be required to accommodate a handicapped employee by restructuring a job in a manner which would usurp the legitimate rights of other employees in a collective bargaining agreement.") (citation omitted); *Mackie*, 804 F.Supp. at 1511–12 (holding that plaintiff's rights under the Act do not prevail over plaintiff's rights under a postal service CBA); *Hurst v. U.S. Postal Serv.*, 653 F.Supp. 259, 261–63 (N.D.Ga.1986) (holding that plaintiff's rights under the Act could not overcome the provisions of the postal CBA "entered into by the union to which he voluntarily belongs"); *Eckles v. Consolidated Rail Corp.*, 890 F.Supp. 1391, 1404 (S.D.Ind.1995) (describing cases decided under the Act as imposing a virtual "per se" rule against actions violating a CBA), *aff'd*, 94 F.3d 1041 (7th Cir.1996); 29 C.F.R. § 1614.203 (1996)("For the purpose of this paragraph, an employee of the United States Postal Service shall not be considered qualified for any offer of reassignment that would be inconsistent with the terms of any applicable collective bargaining agreement."). Nor has Plaintiff made a showing that a permanent light-duty position was available in close proximity to the Defendant's refusal to reassign. *See Shiring*, 90 F.3d at 832 ("[Plaintiff] would have to demonstrate that there were vacant, funded positions whose essential duties he was capable of performing, with or without reasonable accommodation, and that these positions were at an equivalent level or position as [the plaintiff's position]."); *McCollough*, 929 F.Supp. at 1506–07 (requiring plaintiff to "survive defendant's motion for summary judgment only if he produces evidence that a vacant job for which he was qualified existed"); *Michelin*, 860 F.Supp. at 1492–93. For these reasons, the court declines to follow the *Michelin* rationale in the instant case and require Defendant to reassign Plaintiff to another position. Therefore, the court finds that the Defendant has satisfied his obligations under the Act towards the Plaintiff and summary judgment is due to be granted for the Defendant on this portion of the Plaintiff's claim.

### Plaintiff's Title VII Retaliation Claim

Plaintiff claims that her dismissal was the result of a sexual harassment charge she filed against her supervisors, Hughes and Lassie Woolfolk. Plaintiff alleges that the proceedings resulting in her termination were begun soon after an administrative hearing dealing with Plaintiff's charges of sexual harassment. Defendant, on the other hand, claims that Plaintiff's termination was the result of the nondiscriminatory reasons listed in the Plaintiff's Notice of Removal.

Title VII protects employees engaging in statutorily protected activities, such as filing a charge with the EEOC, against retaliation by an employer. 42 U.S.C. § 2000e–3(a). Proof of retaliation is controlled by the framework set forth in *McDonnell Douglas* and *Burdine*. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

---

F.Supp. 1181, 1188 (D.C.Md.1985) ("Examination of the [appropriate C.F.R. section] le[a]ds to the ultimate conclusion that the duty to reasonably accommodate only contemplates accommodation of a qualified handicapped employee's present position."); *Shiring v. Runyon*, 90 F.3d 827, 831–32 (3d Cir.1996) (describing the amendment of § 794(d) of the Act and the consequent amendment of 29 C.F.R. § 1614.203(g) so that it now states that "employers shall offer to reassign nonprobationary employees if those employees become unable to perform the essential functions of their jobs"). Therefore, the Act seems to require reassignment to vacant, funded positions if certain preconditions are met. *See Shiring*, 90 F.3d at 832, 29 C.F.R. § 1614.203(g) (1996).

Accordingly, Plaintiff must first meet her burden of establishing a prima facie case of retaliation. In order to meet this burden, she must show "(1) that [s]he has engaged in statutorily protected activity; (2) that the employer has taken an adverse employment action; and (3) a causal connection exists between the two." *Meeks v. Computer Associates Int'l,* 15 F.3d 1013, 1021 (11th Cir.1994); *Donnellon v. Fruehauf Corp.,* 794 F.2d 598, 600–601 (11th Cir.1986) (*citing Canino v. U.S. E.E.O.C.,* 707 F.2d 468, 471 (11th Cir.1983)). To recover for retaliation, Plaintiff need not prove the underlying claim of discrimination which led to her charge, but she must have had a reasonable belief that the discrimination existed. *Tipton v. Canadian Imperial Bank of Commerce,* 872 F.2d 1491, 1494 (11th Cir.1989). Here, for Plaintiff to establish the causal connection between the protected activity and the adverse employment action, she must demonstrate that the filing of a charge with the EEOC "was a 'but for' cause of the adverse employment decision. . . . If the employee does not bear that burden of persuasion, he or she may not prevail." *McDaniel v. Temple Indep. Sch. Dist.,* 770 F.2d 1340, 1346 (5th Cir.1985).

Once Plaintiff has established a prima facie case, the burden then shifts to the Defendant, who must produce evidence that the employment decision was motivated by legitimate, non-discriminatory reasons. *See McDonnell Douglas,* 411 U.S. 792, 93 S.Ct. 1817. If the Defendant meets this burden, the presumption created by Plaintiff's prima facie case drops out of the litigation, and Plaintiff bears the ultimate burden of persuasion that Defendant's proffered legitimate, non-discriminatory reasons are a mere pretext for discrimination. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

The court finds that Plaintiff has established a prima facie retaliation claim. Filing a claim of sexual harassment is a protected activity under Title VII, and the Plaintiff's termination was an adverse employment action. Additionally, the proximity in time between the EEOC hearing and the Plaintiff's termination is sufficient to establish a causal link between the protected activity and her termination. *See Donnellon,* 794 F.2d 598 (prima facie case established where discharge occurred one month after filing charge).

The Defendant contends that the Plaintiff's termination was the result of her repeated on-the-job accidents, improper conduct, a failure to timely report an on-the-job injury, and Plaintiff's inability to fulfill her duties. The Plaintiff disputes several of these grounds but does not discuss her alleged inability to perform her city carrier duties. The Plaintiff does seek to distinguish her treatment by the Defendant from Defendant's treatment of John Catney ("Catney"), a Montgomery area Service employee who suffered from asthma. The Plaintiff claims that Catney was permanently reassigned to a light-duty position while she was removed from the Service. She alleges that the difference in treatment demonstrates the Defendant's discriminatory intent. However, the Plaintiff does not dispute that Catney requested a permanent light-duty assignment and transfer to another "craft" while Plaintiff requested only temporary light-duty. The court finds these differences to be substantial and that the Plaintiff has not raised a material issue of fact that the Defendant's rationale for her termination is pretextual.

Moreover, the Plaintiff argues that her termination for filing fifteen "industrial accidents" reports over a five-year period is pretextual. The Plaintiff claims that several of the accident reports were duplicative and several resulted in no lost time to the Service. The Plaintiff also disputes that the number of accident reports has any bearing on her ability to function as a Service employee. The court finds that Plaintiff has also failed to raise a genuine issue of material fact on this ground. In her response, Plaintiff seeks to distance herself from these accident reports. However, an independent examination by the court shows that Plaintiff herself signed documents supporting each of these claims. Additionally, despite the Plaintiff's claims to the contrary, the court can find only one instance in which Plaintiff identified an accident as recurring and duplicative. Therefore, the court finds that no gen-

uine issue of material fact exists over the legitimate, non-discriminatory nature of this basis for Plaintiff's termination.

The court additionally finds that Plaintiff's inability to perform her duties is an additional legitimate, non-discriminatory reason for her termination. Although the Plaintiff insists that the Defendant should have provided her with a reasonable accommodation, the court's opinion demonstrates that the Service fulfilled its legal obligations under the Act. Therefore, it was not pretextual for the Defendant to terminate the Plaintiff based on her inability to perform her assigned duties. Therefore, for the above reasons, the court finds that Defendant's motion for summary judgment on Plaintiff's retaliation claim is due to be granted.

*Plaintiff's Family Medical Leave Act Claim*

██ The Plaintiff alleges that she asked Hughes for information on the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C.A. § 2617 (West Supp.1996), on two separate occasions prior to her termination. Plaintiff further alleges that Hughes never provided the requested information and that she was terminated as a result of her efforts to exercise her rights under the FMLA. The Defendant argues that Plaintiff failed to exhaust her administrative remedies[5] and even if she had that she failed to state a prima facie FMLA case. The Defendant bases his prima facie argument on the prima facie case set forth in *Oswalt v. Sara Lee Corp.*, 889 F.Supp. 253, 259 (N.D.Miss.1995), *aff'd*, 74 F.3d 91 (5th Cir.1996) which found a prima facie case where the plaintiff showed: (1) that he was protected under the FMLA, (2) he suffered an adverse employment decision, and (3) that he was treated in a less favorable manner than an employee who had not requested leave under the FMLA or that the adverse decision resulted from his request for leave. *See also Kaylor v. Fannin Regional Hosp., Inc.*, 946 F.Supp. 988, 1000–01 (N.D.Ga.1996) (finding that FMLA prima facie cases may be established through the use

of direct evidence, circumstantial evidence, and statistical evidence and setting out a four-part circumstantial evidence prima facie test).

The Defendant argues that the Plaintiff never requested leave under the FMLA and cannot therefore meet the prima facie test. However, the Plaintiff contends that such an interpretation would eviscerate the FMLA because it would allow an employer to withhold FMLA information in an attempt to terminate an employee before he or she could file a claim for leave. According to the Plaintiff, such an employer could avoid liability under the FMLA as long as no leave request had actually been filed. The court sees the merit in the Plaintiff's argument and finds that the Plaintiff had satisfied her FMLA prima facie case.

██ Once a plaintiff presents a FMLA prima facie case, the employer must come forward with a legitimate nondiscriminatory reason for the adverse employment decision. *Kaylor*, 946 F.Supp. at 1001. The employer must "present evidence to explain its actions." *Id.* Just as under the standard *Burdine/McDonnell Douglas* burden shifting approach, the employer's production of a legitimate nondiscriminatory reason "defeats the presumption of intentional discrimination created by the prima facie case" and the plaintiff must then "produc[e] evidence to show that the articulated legitimate nondiscriminatory reason is merely a pretext for discrimination." *Id.* (citing *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)).

██ As discussed in the preceding section, Defendant contends that Plaintiff's employment was terminated for several legitimate nondiscriminatory reasons contained in the Plaintiff's Notice of Removal. Plaintiff disagrees and offers the same arguments as

---

5. The Plaintiff cites *Spurlock v. NYNEX*, 949 F.Supp. 1022, 1030–31 (W.D.N.Y.1996) for the proposition that there is no exhaustion requirement under the FMLA. While the resolution of this issue is not clear, the court assumes for purpose of its discussion that the Plaintiff is

either under no duty to exhaust her remedies or has sufficiently pursued the possible administrative remedies. *But see Mann v. Haigh*, 891 F.Supp. 256, (E.D.N.C.1995) (finding that plaintiff must exhaust administrative remedies prior to seeking judicial review of a FMLA claim).

previously discussed. Just as in the retaliation section, the Plaintiff has failed to show that the Defendant's proffered reasons were pretextual. For the same reasons listed in the preceding section, the court finds that Plaintiff has failed to carry her burden to create a material issue of fact that the Defendant intentionally discriminated against her based on her desire to use the FMLA. For this reason, the court finds that the Defendant's motion for summary judgment on the Plaintiff's FMLA claim is due to be granted.

## CONCLUSION

Based on the foregoing analysis, it is CONSIDERED and ORDERED that Defendant's motion for summary judgment be and the same is hereby GRANTED. A judgment in accordance with this memorandum opinion will be entered separately.

## JUDGMENT

In accordance with the attached memorandum opinion and Rule 58 of the Federal Rules of Civil Procedure, it is CONSIDERED and ORDERED that Defendant Marvin T. Runyon's motion for summary judgment filed on December 3, 1996, be and the same is hereby GRANTED and that JUDGMENT be and the same is hereby ENTERED in favor of said Defendant and against Plaintiff Margaret Sidaris and that Plaintiff take nothing by her said suit.

It is further CONSIDERED and ORDERED that all costs herein incurred be and the same are hereby taxed against Plaintiff, for which let execution issue.