**Josue V. ANDUJAR, Plaintiff,**

v.

**IPC INTERNATIONAL CORPORATION,**
**Defendant.**

**Civil Action No. 07–10357–NMG.**

United States District Court,
D. Massachusetts.

Oct. 15, 2008.

Stephen T. Paterniti, Jackson Lewis LLP, Boston, MA, for Defendant.

Paul F. Wood, Law Office of Paul F. Wood, Boston, MA, for Plaintiff.

## MEMORANDUM & ORDER

GORTON, District Judge.

In this disability discrimination suit brought under the Americans with Disabilities Act ("the ADA"), 42 U.S.C. § 12112(a), *et seq.,* and the Massachusetts anti-discrimination statute, M.G.L. c. 151B,

plaintiff alleges he was unlawfully terminated from his employment as a mall security guard. The defendant has moved for summary judgment.

## I. *Background*

### A. Factual Background

Plaintiff, Josue V. Andujar ("Andujar") commenced employment at the Chestnut Hill Mall ("the Mall") in September, 2000. About two years later the defendant, IPC International Corporation ("IPC"), was hired by the Mall to provide security services. Safety officers, including Andujar, were retained after this transition and became IPC employees. IPC's security contract with the Mall includes a "Proposed Deployment Schedule" describing the number of hours that various security personnel are required to work each week.

Sometime after IPC's assumption of security operations Andujar was promoted to the position of Lead Safety Officer at the Mall. In that role his duties included commencing his shift at 10:00 AM and ensuring that: 1) all Mall doors were opened for customers at the start of the day, 2) roof hatches were secure, 3) Mall elevators and the music in the Mall were turned on and 4) tenants were open for business at 10:00 AM. He was also responsible for receiving reports about any contractors working in the Mall and issues from the previous shift, filling out incident and daily reports, doing "walk-thrus" of stores and responding to incidents in the Mall, including reports of shoplifting.

Andujar was born with and suffers from Cerebral Palsy. Cerebral Palsy is a congenital condition resulting in the loss of nerve function. Andujar suffers several physical impairments as a result of his Cerebral Palsy. He drags his leg when he walks, causing a noticeable limp, and has difficulty negotiating stairs. According to his doctor, "his gait is markedly abnormal."

Andujar also suffers back pain associated with his Cerebral Palsy. While employed at the Mall he would occasionally feel lower back pain after waking up in the morning which would last 20–30 minutes. The pain occurred while Andujar was bending or walking and he would have to take smaller steps when experiencing pain. The pain would dissipate after approximately 30 minutes but would return after he had driven to work in his car. It would then ordinarily dissipate again 10–15 minutes after arrival.

Andujar's back pain occasionally caused him to be late to work. He informed his supervisor, Anthony Rokki ("Rokki"), that he suffered from Cerebral Palsy and that at times the associated back pain caused him to be late to work. Rokki admits that the thought that Andujar's condition could affect his job duties crossed his mind. Between February and July, 2006, Andujar's work attendance record reflects that he was tardy 18 times. During that period he received one verbal warning and three written warnings because of his tardiness.

Sometime on or after July 26, 2006, Andujar was involuntarily terminated from his employment with IPC. He was given the option to work afternoon shifts, some of which were at the nearby Atrium Mall, but the parties dispute whether this occurred before or after his employment was terminated. Andujar declined to take those shifts because his child care needs would not permit him to work the hours required and because the work at the Atrium Mall required climbing more stairs.

### B. Procedural History

Andujar filed his complaint on February 23, 2007, which IPC has answered. IPC filed the pending motion for summary judgment on July 15, 2008. Andujar has

filed an opposition to that motion to which IPC has filed a reply. More recently, IPC has moved to strike portions of the affidavits that Andujar submitted in opposition to the pending motion for summary judgment.

## II. *Legal Analysis*

### A. Summary Judgment Standard

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 822 (1st Cir.1991) (quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir.1990)). The burden is upon the moving party to show, based upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's favor. *O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir.1993). If, after viewing the record in the nonmoving party's favor, the court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate.

### B. Application

To state a prima facie claim for disability discrimination under the ADA or M.G.L. c. 151B a plaintiff must prove, by a preponderance of the evidence, that 1) he was disabled within the meaning of the act, 2) he was a qualified individual, meaning he was able to perform the essential functions of the position with or without a reasonable accommodation, and 3) he was discharged because of his disability. *Ward v. Mass. Health Research Inst.*, 209 F.3d 29, 33 (1st Cir.2000); *Labonte v. Hutchins & Wheeler*, 424 Mass. 813, 816 n. 5, 678 N.E.2d 853 (1997) (noting that Massachusetts employee discrimination law closely mirrors the ADA).

IPC asserts that it is entitled to summary judgment because 1) Andujar cannot establish that he is disabled or a "qualified individual" within the meaning of the ADA, 2) the accommodation that Andujar suggests should have been provided is not reasonable and 3) IPC provided Andujar with a reasonable accommodation, i.e. working later shifts, which he rejected.

#### 1. Andujar's Disability

The ADA defines a disability, in relevant part, as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2)(A). The ADA does not explain what constitutes a major life activity but the Equal Employment Opportunity Commission ("EEOC") regulations define that term to include caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working. 29 C.F.R. § 1630.2(I).

■ Andujar contends that his Cerebral Palsy substantially limits his ability to walk and to work. He has presented evidence that he drags his leg when he walks and has difficulty negotiating stairs. According to his doctor, "his gait is markedly abnormal."

Alternatively, Andujar asserts that even if he is not substantially limited in these functions, he was regarded as disabled by his employer making him qualified under § 12102(2)(C) of the ADA. That statutory provision defines disability as an impairment that substantially limits major life activities and may include something a person is "regarded as having." In support he refers to the statement of his supervisor, Rokki, that the thought that Andujar's limp could affect his job duties "crossed my mind."

IPC responds that Andujar is not substantially limited in his ability to walk or work. It notes that Andujar produced no evidence to support his assertion that he is substantially limited from working. With respect to walking, IPC contends that Andujar's ability is not so substantially limited as to qualify him as disabled. IPC also asserts that the fact that Andujar's supervisors were aware of his health limitations does not create a dispute of fact with respect to whether he was regarded as disabled by his employer.

Based on the evidence Andujar has proffered, genuine issues of material fact remain, at least with respect to whether he was substantially limited in the major life activity of walking, and to whether his employer regarded him as disabled. Therefore, the issue of his disability within the meaning of the ADA cannot be decided on a motion for summary judgment.

## 2. Qualified Individual

■ IPC also asserts that it is entitled to summary judgment because Andujar is not a "qualified individual" under the ADA. Such an individual is an employee who, with or without a reasonable accommodation, is able to perform the essential functions of his position. *Ward,* 209 F.3d at 33. IPC asserts that punctuality was an essential function of Andujar's job that he could not perform.

Andujar does not dispute that he was often unable to arrive at work on time. Nor would the accommodation he suggests, permitting him to arrive later on days he experiences pain, solve the problem. At issue, therefore, is whether punctuality was an essential function of Andujar's job as a lead security officer at the Mall.

The First Circuit Court of Appeals considered similar facts in *Ward v. Massachusetts Health Research Institute. Id.* In that case the plaintiff, a lab and data entry assistant, was often late for work because his arthritis caused stiffness and pain in the mornings. *Id.* at 31. In assessing whether regular and timely attendance was an essential function of plaintiff's job, the First Circuit explained that

> resolution of the issue in each case requires a fact-intensive inquiry into the pattern of the attendance problem and the characteristics of the job in question.

*Id.* at 35. The First Circuit then concluded that timely attendance was not an essential function of plaintiff's position. *Id.* The court emphasized that there was no evidence that plaintiff's position required him to be present during specific hours of the day. *Id.* Rather, as a data entry assistant, all that mattered was that he work the requisite 7.5 hours per day. *Id.*

■ Here, the facts are clearly distinguishable from *Ward.* Andujar's job as lead security officer did require him to be present at specific hours of the day. Many of his responsibilities focused on ensuring

that the Mall was prepared to open for customers at 10:00 AM. Andujar was responsible for ensuring that the Mall doors were unlocked, that the elevators and music were turned on and that tenants were open for business at 10:00 AM. Unlike the plaintiff in *Ward*, fulfillment of those duties required that Andujar arrive on time. Where a position requires that tasks be performed at a particular time, attendance and punctuality are essential functions of the job. *See, e.g., Tyndall v. Nat'l Educ. Ctrs., Inc.*, 31 F.3d 209, 213 (4th Cir.1994) (regular attendance at specified times essential function of teaching position); *Guice–Mills v. Derwinski*, 967 F.2d 794, 798 (2d Cir.1992) (commencing shift at particular time could be essential requirement of head nurse position).

In an effort to demonstrate that genuine issues of material fact exist, Andujar asserts that his punctuality was never an issue under his previous supervisor and that when he was running late he always called another security officer to ensure that his responsibilities were fulfilled. The fact that his previous supervisor allowed him to come in late fails to demonstrate that punctuality was not an essential function of the job. Significantly, as IPC notes, Andujar's tardiness put IPC at risk of breaching its security contract with the Mall which required that security officers work a specified number of hours per week. Furthermore, the fact that Andujar arranged for another security officer to perform his duties, far from demonstrating that they were not essential, underscores just how important those duties were.

This Court also finds IPC's arguments with respect to reasonable accommodation to be persuasive but it need not decide that issue as a matter of law. Because IPC has succeeded in demonstrating that Andujar is not a qualified individual under

the ADA, it is entitled to summary judgment in its favor.

### ORDER

In accordance with the foregoing, IPC's motion for summary judgment (Docket No. 13) is **ALLOWED**. IPC's motions to strike (Docket Nos. 24 and 25) are **DENIED** as moot.

**So ordered.**